## Malcom Caruthers

*v.*

## Malcom McNeill *et al.*

*Filed at Ottawa February 3, 1881.*

1. Will—*rule for construing.* In the construction of wills the intention of the testator is always the important question to be determined, and that is usually ascertained from the language used by him; and when that intention is ascertained, it is the duty of courts to see that it is carried out and enforced. It is always proper, in determining this intention, to examine each provision of the will that has any bearing on the point in dispute, and construe them together.

2. Same—*devise, whether subject to expenses of building houses on other lots.* Where a testator devised to his nephew, subject to the testator's debts, his wife's annuity for life, and the building of certain houses on his vacant lots, the rents of certain property, until he should become thirty years of age, when he should have such property in fee simple, subject thereafter only to its *pro rata* payment of any debts against the testator's estate created either by

him, or his executors by his directions, and his wife's annuity during her life, and in a subsequent part of the will stated, "1 mean, ✻ ✻ ✻ where I have said the fee simple of all the property herein named, I mean that the fee simple title,—the perfect and complete title," and then gave directions for building some five or six houses on his vacant lots in a certain order, as fast as sufficient sums might be realized from the rents and profits of his property, all of which were to be built at the common expense of all his property, and it appeared that the testator had erected a portion of the buildings before his death, and a reasonable time had elapsed to have erected the others before the nephew arrived at the required age, and that the widow was then dead, it was *held*, that the nephew took the property, on arriving at the age of thirty years, subject only to the debts of the testator, and those created by the executors, existing at that time, and that the property was not liable for debts contracted by the executors after that time in the erection of houses.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. S. Williams, Judge, presiding.

Mr. William S. Everett, for the appellant:

It is clear, from the will, that the only charge made by the testator was upon the rents of the property devised, and not upon the realty. The realty was to be taken by complainant after he arrived at the age of thirty, subject only, thereafter, to debts created,—that is, to debts which were then in existence, and which were created by the testator, or, under his directions, by his executors.

By the will the testator clearly shows an intention to have the estate ready for distribution at the particular periods mentioned, and to further enable his executors to have the lots so far built up as to require no further time than that given by himself. See *Goodright* v. *Barron*, 11 East, 224; 2 Jones, (Pa.) 256.

As to the proper rule for construing wills and other written instruments, so as to arrive at the intention of the maker, counsel cited *Abbott* v. *Middleton*, 7 H. C. C. 68; *Shore* v. *Wilson*, 9 C. C. & P. 525; *Doe* v. *Jessup*, 12 East, 293; *Jackson* v. *Laznere*, 5 Cow. 228; *Hone* v. *Van Schaick*, 3 Comst. 540; *Walton* v. *White*, 5 Md. 304; *Allen* v. *Van Miter*, 1 Metc.

(Ky.) 276; *Chrystie* v. *Phyle*, 19 N. Y. 348; *Cromer* v. *Pickney*, 3 Barb. Ch. 475; *Perkins* v. *Mather*, 49 N. H. 110.

Mr. WILLIAM H. KING, and Mr. FREDERICK W. PACKARD, also for the appellant:

A "fee simple title" is the highest title a person can hold in land, clear of any condition, limitation or restriction. 2 Blackstone's Com. 103–9; *Frink* v. *Darst*, 14 Ill. 308; 1 Cruise's Digest, title "Estate in Fee Simple," § 44.

"Fee simple is a pure inheritance, clear of any qualification or condition. * * * It is an estate of perpetuity, and confers an unlimited power of alienation, and no person ·is capable of having a greater estate or interest in land." 4 Kent's Com. 5.

If a party conveying land makes no reservation of rent, and conveys the fee, the accruing rent goes with the fee. *Dixon* v. *Niccolls*, 39 Ill. 372; *Crosby* v. *Loop*, 13 id. 625.

Did the testator mean what he said? We know of no better way of construing an instrument than by the language used. If he did not mean what his language imports, what did he mean? See *Pool* v. *Blakie*, 53 Ill. 502; *Ely* v. *Ely*, 80 id. 540.

By the will, appellant was not bequeathed the rents, after he became thirty years old, in any other manner than as a necessary adjunct to "the fee simple title," which of itself carried with it the rents which should thereafter accrue. *Dixon* v. *Niccolls*, *supra*; *Crosby* v. *Loop*, *supra*.

The words of the will are, "only thereafter subject to its *pro rata* payment of any debts against my estate, created," etc., being in the past tense, and are equivalent to saying, having been theretofore created. By the specific legacy to appellant of certain specified and accurately described portions of his property, the testator negatived any right to apply them to any other purpose. If a thing is to be done in a certain manner, that thing shall not be done in any other manner, even if there be no negative words. Sedgwick on Construct. of Stat. and Const. Law, (2d ed.) 30, 31.

If a thing is to be done in a particular manner, it excludes every other mode. Sedgwick, 31, note *a; Smith* v. *Stevens*, 10 Wall. 326; *Blake* v. *Hawkins*, 8 Otto, 327. See, also, *Brownfield* v. *Wilson*, 78 Ill. 468.

The expression, "as the rents supply means," etc., must be referred to that part of his estate not absolutely disposed of without restrictions. *Brownfield* v. *Wilson*, 78 Ill. 471.

That a court of equity has jurisdiction of the administration of estates, and to expound wills, counsel cited 2 Story's Eq. Jur. sec. 1065; *Townsend* v. *Radcliff*, 44 Ill. 446; *Walker et al.* v. *Morris*, 14 Ga. 326; 1 Story's Eq. Jur. sec. 543.

Mr. MALCOM CARUTHERS, *pro se:*

An estate in "fee simple" is the entire and absolute property of the subject, and therefore a grant of such an estate precludes any further grant or disposition of the property, as nothing remains in him to be granted. 2 Black. Com. 104.

Words are taken most strongly against the grantor in a will, as in a deed. Wigram on Wills, 26.

An express intention in a will is not controlled by implications drawn from other provisions in the will, if the latter can, by fair intendment, be reconciled to the former. Wigram on Wills, 26; *Ward* v. *Armory*, 1 Curt. 419.

Messrs. MILLER & FROST, for the appellees:

It is a well settled rule that all the parts of a will are to be construed together and in relation to each other, so as, if possible, to form one consistent whole; and such a construction should be placed on the will as to sustain and uphold it in all its parts, if this can be done consistently with established rules of law and construction. *Grimes* v. *Hammon*, 35 Ind. 198. As to rule for construing, see *Scott* v. *Guernsey*, 60 Barb. 163; *Edwards* v. *Bibb*, 3 Ala. 666; *Baxter* v. *Baxter*, 122 Mass. 89; *Williams* v. *Bradley*, 3 Allen, 270.

Expenditures for re-building are necessary so long as the instructions in the will are obligatory upon the executors.

The devise is subject to the debts created in carrying out the instructions contained in the will. See *Schafner* v. *Wadsworth*, 106 Mass. 19.

The same power which confers the title imposes the incumbrance and creates the charge, and the devisor has the same right to devise the fee simple charged with an incumbrance or particular debt which has been, or which he may direct to have put upon it, as to devise it absolutely. See *Grimes* v. *Hammon*, 35 Ind. 198; *Scott* v. *Guernsey*, 60 Barb. 163; *Schafner* v. *Wadsworth*, 106 Mass. 19; *Edwards* v. *Bibb*, 3 Ala. 66; *Baxter* v. *Baxter*, 122 Mass. 89; *Oakesen's Appeal*, 59 Pa.; *Markillie* v. *Ragland*, 77 Ill. 98; *Brownfield* v. *Wilson*, 78 id. 467; *Williams* v. *Bradley*, 3 Allen, 270; *Wilson* v. *Watson*, 4 Scam. 64; *Smith* v. *Taylor*, 21 Ill. 296; *Holliday* v. *Dixon*, 27 id. 33; *Pool* v. *Blakie*, 53 id. 495; *Mason* v. *Ely*, 38 id. 138; *Heuser* v. *Harris*, 42 id. 425; *The People* v. *Jennings*, 44 id. 488.

In construing wills, in order to carry into effect the design of the testator, the powers of the executors will be deemed commensurate with the trusts which are imposed upon them. *Hayes* v. *Washington*, 72 Ill. 84; *Williams* v. *Bradley*, 3 Allen, 270.

A trust was created by the testator, and to be performed by the executors, and was to be worked out by means of this property and by means of the rents accruing therefrom. The rents were to be collected and used by the executors for re-building, and until that trust was discharged and terminated, the immediate enjoyment of the property by Caruthers was necessarily postponed. This clearly expressed purpose of the testator was to be carried out reasonably and consistently, so as to accomplish just what he intended. This can only be done by giving to the executors full control and possession of the property until the trust concerning it is completed. 11 Moak, (Eng. Rep.) 163; *Stevenson* v. *Mayor of Liverpool*, 3d Vol. Curtis' U. S. Digest, p. 610, sec. 75;

*Nash* v. *Cutter,* 19 Pick. 67; *Launderson* v. *Stearns,* 6 Mass. 37; *Hall* v. *Curling,* 9 Pick. 395; *Dow* v. *Wainwright,* 13 id. 328; *Stone* v. *Hobart,* 8 id. 464; 15 Mass. 113; *Beekman* v. *Bouser,* 23 N. Y. Court of App. 298; *Gilman* v. *Redding-ton,* 24 id. 10; *Loder* v. *Hatfield,* 71 N. Y. (26 Sickles,) 92.

Messrs. WALLACE & MASON, also for the appellees:

All parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; but where several parts are absolutely irreconcilable, the latter must prevail. 7 Jarman's Rules; 1 Redfield, 425, sec. 9; *Brownfield* v. *Wilson,* 78 Ill. 467.

Where the general intent of the testator is clear, and it is impracticable to give effect to all the language of the instrument expressive of some particular or special intent, the latter must yield to the former; but every expressed intent of the testator must be carried out when it can be, and the general intent overrides all mere technical and grammatical rules. A clearly expressed intention in one portion of the will, is not to yield to a doubtful construction in any other portion of the instrument. 1 Redfield, pages 433, 434; *Brownfield* v. *Wilson,* 78 Ill. 467; *Funk* v. *Eggleston,* 92 id. 515.

If the testator supposed that his general intention would be accomplished at or before complainant arrived at thirty years of age, and under such supposition fixed that time for the fee to vest in him, and such general intention was not then accomplished, then the rule is, the time for the vesting of the title or the beneficial possession in complainants must be postponed till such general purpose is accomplished.

If the testator had used the word "only" in the same position that the complainant wishes the court to use it, then such repugnance as might then appear would not be allowed to restrict or destroy such general purpose. 1 Redfield, 442, 443; *Brownfield* v. *Wilson,* 78 Ill. 467; *Funk* v. *Eggleston,* 92 id. 115.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Malcom Caruthers, for the purpose of withdrawing from the possession and control of the executors of the estate of Malcom McNeill, deceased, lots 5 and 6, in block 116 of School section addition of Chicago, and vesting in the complainant the entire control of the property, together with its use, rents and profits.

The bill is based upon the ground, that complainant was, on the 1st day of May, 1878, when he arrived at the age of thirty years, under the provisions of the will of Malcom McNeill, entitled to the property, free and clear of all incumbrance, except such debts as had, at that time, been created by the testator in his lifetime, or his executors, under the power or directions contained in the will, since the testator's death.

The circuit court, on the hearing, rendered a decree substantially as prayed for by complainant in the bill, but on appeal to the Appellate Court the decree was reversed, and no remanding order entered. To reverse the judgment of the Appellate Court the complainant in the bill took this appeal.

There is no controversy between the parties in regard to any question except as to the proper construction of the will of the testator, Malcom McNeill. The testator, who resided in Christian county, Kentucky, died in the month of February, 1875, leaving a large quantity of property in Kentucky, Illinois, Tennessee and Mississippi.

The will of deceased was dated on the 8th day of November, 1873, to which there were added, at subsequent dates, four codicils. The will and codicils were proven and admitted to probate in the county court of Christian county, in March, 1875. That part of the will that relates to the property devised to complainant is as follows:

" I give to my grandson, Malcom Caruthers, son of my daughter Elizabeth Caruthers, deceased, subject, *as all of my*

*property is,* to the payment of my debts, the annuity to my wife for her lifetime, and the rebuilding of houses on my now vacant lots, in the city of Chicago, State of Illinois, *the rents* of the following described property, in said city of Chicago, and county and State before named, to-wit:   The rents of lots five (5) and six (6), in block one hundred and sixteen (116), school section addition to Chicago, this lot lying and being on the west side of South Clark street, in said city, fronting fifty (50) feet on said Clark street, purchased by me of the Messrs. Bigelow (see the Bigelow deeds and papers), which houses had, before the great fire of 1871, on them, street numbered two hundred and twenty-four (224), two hundred and twenty-six (226), and two hundred and twenty-six and a half (226½), and has on them now, three stores, with a five-story house spread over the entire lot and now numbered.   The said Malcom Caruthers to receive the rents thereof until he is thirty years old, should he live to that period, then he shall have said lot, and houses on said lot, in fee simple title, only thereafter subject to its *pro rata* payment of any debts against my estate, created either by me, or my executors by my directions, and wife's annuity as long as she may live. Should Malcom Caruthers, however, not live to the age of thirty years, and leaving no children, then, and in that event, this property above named is to be given, one-half to the children of Thomas Henry McNeill, the other half to the children of my daughter Martha Boddie—I mean to their then living children ; should, however, Malcom Caruthers leave a child or children then living—I mean living at the time he would be thirty years old—then it goes to his child or children so living."

This provision of the will is followed by certain directions by the testator to his executors, in regard to building upon vacant lots in Chicago, " which he may not have gotten through with while living."   He first directs a four story house built on a lot on Lake street, at number 122; second, he directs, as the rents supply the means, a three story brick

block to be erected at 311, 313 and 315 South Clark street; third, "as the rents, as named before, of all my property in Chicago, may supply the means," his executors are directed to erect a similar brick building at No. 324 South Clark street; fourth, a desire is manifested that the lot on the corner of Clark and Jackson streets, fronting the Grand Pacific Hotel, should be leased for a term of thirty or forty years, but, in case it can not be leased for a reasonable price within two years after the death of the testator, then he directs his executors to erect a house on the lot at a cost not exceeding $80,000, "for the building of which, to aid the rents that may be coming in, they (the executors) are authorized and empowered to mortgage said lot to the amount of $50,000, payable in equal payments of two, three and four years. He also directs a brick house, corresponding with its immediate neighbors, to be put on a certain lot on Market street, adjoining the property of the "Farwells," as soon as the income of the rents will enable the executors to do so. Then follows this language: "All of which buildings are to be done and performed at the common expense, from the rents of my property, to progress in the order above named."

It appears, from the evidence, that the testator, at the time of his death, had improved a large portion of the property, 46 Lake street, 128 and 130 Clark street, 186 and 186½ Clark street, 201 and 203 Clark street, 222, 224 and 226 Clark street, and 122 Lake street were being built.

Since the death of the testator, the executors have improved the following property: 122 Lake street has been finished, and buildings erected on 311, 313 and 315 South Clark street, and improvements, amounting to about $1350, have been made on 201 and 203 Clark street. The following remain to be improved, under the direction of the will: No. 250, 252 and 323 South Clark street, and the forty feet on Market street.

The widow of the testator died in August, 1876, and the annuity bequeathed to her had been paid. Complainant was

thirty years of age on the first day of May, 1878, and it appears, from the master's report, that, at the time of the filing of the bill, the debts against the estate, which had been created by the testator in his lifetime, or the executors, since his death, were merely nominal.

The question arising upon the record is, whether Malcom Caruthers, on arriving at the age of thirty years, was entitled to have the possession and use of the property devised to him, subject only to such debts as had then been created, or, is the property to be held by the executors until the remainder of the Chicago property shall be improved by the executors, and the rents used for that purpose.

In the construction of wills, the intention of the testator is always the important question to be determined, and that intention is usually ascertained by the language used by the testator, and when ascertained, it is the duty of courts to see that it is carried out and enforced in the manner declared in the will. It is always proper, in determining what the testator intended, to examine each provision of the will that has any bearing on the point in dispute, and construe them together.

It will be observed that there is a marked distinction between the language used by the testator in devising the rents of the real estate to complainant, and the land itself. The will declares: " I give to   *   *   *   Malcom Caruthers, *   *   *   subject, as all my property is, to the payment of my debts, the annuity to my wife for her lifetime, and the rebuilding of houses on my now vacant lots in the city of Chicago,   *   *   *   the rents of the following described property:   *   *   *   the said Malcom Caruthers to receive the rents thereof until he is thirty years old, should he live to that period,—then he shall have said lot and houses on said lot in fee simple title, only thereafter subject to its *pro rata* payment of any debts against my estate, created either by me, or my executors by my directions, and wife's annuity so long as she may live."

Had the testator intended, by the language used, that the fee in the property should pass to complainant on the same terms and upon the same footing as the rents, it is strange indeed that he used language so different in meaning when he referred to the fee from that used in speaking in reference to the rents. The testator, in bequeathing the rents, makes the bequest subject to his debts, subject to the annuity to his wife and the rebuilding of the houses on the vacant lots, but when he comes to devise the fee in the lot, that is to pass to complainant at a definite specified time, subject to two things only: its *pro rata* payment of any debts against his estate, created by him or his executors, and subject to the annuity to his wife. It is a significant fact, that the rebuilding on the vacant lots was here omitted, when just previous, in devising the rents, it was inserted. Can it be said that this was without purpose or design on the part of the testator? The language used repels a presumption of that character. If the testator had intended to charge the real estate with the expense of building on the other lots, regardless of the time when the building should be done, doubtless he would have used language which would not have left the matter in doubt, as he did in devising the rents.

The position is, however, taken, that the word "created," does not refer simply to debts then created or existing, but means those that might thereafter be created as well. We perceive no ground upon which that construction can be placed upon the word as used by the testator. He doubtless meant and intended what he said. Debts which were on the 1st day of May, 1878, created, were such as then had an existence, and not such as might come into existence in the future. This is the ordinary meaning of the word, and doubtless the one given it by the testator. Webster says, "created" means "caused to exist; produced; generated."

Again, the expression of the testator that complainant, at the age of thirty, should have the lot "in fee simple title," is entitled to some consideration, tending to show what the

intention was. While the testator had used similar language in another part of the will, doubtless fearing that his language might not be properly understood, he recurs to the language, and says: "I mean, * * * where I have said the fee simple of all the property herein named, I mean that the fee simple title—the perfect and complete title." Is 'it reasonable to believe that the testator would devise to complainant a perfect title to a lot, and at the same time burden it with an incumbrance which might consume the entire income of the property during the natural life of complainant? This is unreasonable, and yet the construction contended for might lead to such a result. If the executors have the right to create a debt one year after complainant became thirty years old, for the payment of which the rents derived from complainant's property may be used, they may do the same in ten or twenty years, and thus practically deprive the complainant of the use and enjoyment of his property during his lifetime, and defeat the plain intention manifested by the testator to vest the absolute title of the property in complainant when he should arrive at the age of thirty years.

But, it is said that the testator's intention is manifested throughout the entire will to have the vacant lots in Chicago rebuilt, and that the expense of rebuilding was to be paid by rents realized from all the Chicago property. To some extent this is doubtless true, but while there was a clause to have certain portions of the property rebuilt, we have the express declaration of the testator that if the lot on the corner of Jackson and Clark streets could be leased for thirty or forty years, he would much prefer that course. In regard to the other property which the testator desired his executors to rebuild, while the will contains no express limitation within which the improvement shall be made, yet it is apparent, from all the provisions of the will, that it was not contemplated that the rebuilding of the property should be delayed for a number of years. Much of the property had been rebuilt by the testator after he wrote his will and before his death, and

doubtless he expected that the improvement would be prosecuted by the executors and completed at an early day, and before complainant should arrive at the age of thirty years. If this had not been expected by him, he might not have provided that complainant, on the 1st of May, 1878, should have a perfect title to the land devised to him.

Much stress, however, is placed on the directions contained in the will. It is true that the directions of the testator, which are a part of the will, are entitled to due consideration in placing a construction upon the instrument. In those directions it is declared, "all of which buildings are to be done and performed at the common expense, from the rents of my property." Does this clause of the will change or modify that provision which declares, "the said Malcom Caruthers is to receive the rents thereof [lots devised to him] until he is thirty years old, should he live to that period,— then he shall have said lot and houses on said lot in fee simple title, only thereafter subject to its *pro rata* payment of any debts against my estate, created either by me, or my executors by my direction." The will bears date Nov. 8, 1873. Complainant would not be thirty years old until May 1, 1878. Here was a period of almost five years within which the rebuilding upon the lots could be carried on at the expense of the property devised to complainant, and the property would be bound for its *pro rata* share of all debts created by the testator in his lifetime, or his executors after his death. Now, when due consideration is given to each clause in the will, we regard the conclusion irresistible that the testator intended that the rebuilding should be consummated before complainant became thirty years old; but whether it was or not, complainant should, at that time, become possessed of the property devised to him, subject only to such debts as had at that time been created.

The intent of the testator is so manifest that complainant should, when he became thirty years old, receive the property with a perfect title, subject only to such debts as had then

been created, that we can not hold that the executors were authorized after that time to encumber the property with debts of their contracting, without disregarding the clear and expressed intent of the testator.

We think it manifest, from a close examination of the directions of the testator, that he did not intend that the rebuilding of his property should be delayed until complainant should arrive at the age of thirty years. The first direction is, that a house should be built at 122 Lake street; second, he wishes 311, 313 and 315 built upon; third, he desires 324 South Clark street built up; fourth, he wants lot on corner of Jackson and Clark streets leased, if it could be leased to advantage within *two* years after his death, and if not, then a house shall be erected; fifth and last, he directs a house to be erected on a lot on Market street. The building is to progress in the order above named.

It is apparent that the testator, from the language used in the fourth direction, expected that all the property before named would be rebuilt before 1877, and if they had followed his directions the house on the corner of Jackson and Clark streets would have been erected in that year, which would have left only one more lot to be built upon, which doubtless could have been rebuilt before the 1st of May, 1878.

It is, therefore, plain that the testator, in the expectation that the Chicago property would be rebuilt before May 1, 1878, provided that date when complainant should come into the possession of the property devised to him, free from all incumbrances, except such debts as had before that time been created. The fact that a portion of the property has not been rebuilt, affords no reason why the plain intention of the testator, as expressed in the will, should be disregarded, and complainant deprived of the possession and use of the property devised to him at the time the testator plainly indicated in the will that he should receive it.

The judgment of the Appellate Court will be reversed and the cause remanded.     *Judgment reversed.*

The judgment of the Appellate Court will be reversed and the cause remanded.

*Judgment reversed.*