| 138 | 541 |
| 154 | 571 |
| 138 | 541 |
| 52a | 233 |
| 138 | 541 |
| 66a | 120 |
| 138 | 541 |
| 169 | 363 |
| 138 | 541 |
| 175 | 523 |
| 138 | 541 |
| 180 | 439 |
| 138 | 541 |
| 181 | 346 |
| 181 | 520 |
| 138 | 541 |
| 190 | [2] 61 |
| 138 | 541 |
| 198 | [3] 625 |
| 138 | 541 |
| 212 | [5] 352 |

## John Dickison

*v.*

## William B. Dickison, Exr.

*Filed at Ottawa October 31, 1891.*

1. Wills—*devise construed.* A testator, by a clause in his will, devised a tract of land to his son John A. and to his daughter Mary Ann, as tenants in common, "to be in full of their portion of my estate, both real and personal, to be theirs, their heirs and assigns, forever." After making other devises to his children, the will directed that all the residue of his real estate, and his personal estate, be sold by his executor, and from the proceeds he should first pay all the testator's debts, etc., and divide the remainder among his heirs, as follows: "To my wife, Sarah A., one-third part thereof, and the remainder to my children in equal portions, share and share alike, to be theirs, their heirs and assigns, forever, absolute:" *Held,* that the land specifically devised to John A. and Mary Ann was the full measure of all they should take of the estate, and that they took nothing under the residuary clause.

2. Same—*construction—intention of testator.* The construction of a will depends upon the intention of the testator, to be ascertained from a full view of everything contained therein, giving just weight and operation to each clause and word employed, unless there is some invincible repugnance, or some portion of it absolutely unintelligible.

3. In order to enable the court to uphold all the provisions of a will, it is permissible to resort to every reasonable intendment,—to reverse the relative order of the devises or bequests, and to transpose the different provisions of the will, if it be possible thereby to render them consistent and give effect to each.

4. And so, repugnant words, in whatever portion of the will they occur, which contravene the evident general purpose and intention of the testator as clearly expressed, may be rejected or transposed, or limited or controlled by other and prior provisions, and by the general purpose and intent thus clearly manifested.

5. Same—*general and specific provisions.* It is a familiar rule in the construction of wills, that general provisions therein must give way to specific provisions, and that where there is a general devise of property in one part of the will and a specific disposition of the same property in another part, these are to be regarded, generally, as excepted out of the general devise.

6. Same—*irreconcilable clauses.* The rule is well established, in this State and elsewhere, that where the clauses of a will are irreconcilable

and the repugnance invincible, the later clause will generally prevail. In such case it will be presumed that the testator, after writing the first clause, changed his mind, and that the subsequent clause gives expression to a later intention formed.

7. The presumption of fact that the testator has changed his mind while writing the will, will never be indulged or the rule applied until it is found, by the application of all other rules of construction, that the difficulty is unsolved and the clauses remain invincibly repugnant. Such presumption and rule are never applied where a contrary intention of the testator is apparent from the whole will.

8. SAME—*residuary clause.* A general residuary clause, being ordinarily introduced by the testator to prevent intestacy as to any part of the estate, will generally be construed as intended for nothing more than a disposition of those portions of the estate not previously disposed of. In such case the presumption of a change of purpose in the testator's mind while preparing his will can not arise.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

Messrs. McCULLOCH & McCULLOCH, for the appellant.

Mr. ARTHUR KEITHLEY, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

April 9, 1874, Griffith Dickison, then in life, made his last will and testament. At that time, it is conceded for the purposes of this appeal, he had ten children. In and by clauses two to eight, inclusive, and clause ten of the will, he made specific devises to his wife and eight of the children, severally. By clause nine he made a specific devise to his two other children, as follows:

"*Ninth*—To my children John Abraham and Mary Ann, I will, devise and bequeath the west half of the north-west quarter of section 27, in township 10, north, range 7, east, in equal shares, to be in full of their portions of my estate, both real and personal, to be theirs, their heirs and assigns, forever."

The eleventh clause of the will is as follows :

"*Eleventh*—All the rest of the real estate of which I may die possessed shall be by my executor sold, also all the personal property I may have at my death shall be sold, and from the proceeds of such sales he shall first pay all my debts, etc., the remainder he shall divide amongst my heirs, as follows :   To my wife, Sarah A. Dickison, one-third part thereof, and the remainder to my children in equal portions, share and share alike, to be theirs, their heirs and assigns, forever, absolute."

On the 7th day of March, 1882, there was executed by the testator, in due form of law, and attached to the original will, the following codicil :

"Whereas, I, Griffith Dickison, did on the 9th day of April, 1874, make my last will and testament, in and by which will I made devises to all my children then born; and whereas, since that date a son has been born to me, whom I have named Fred, I make this codicil to my said will, to have the same force and effect as if it was a part of my original will,—that is to say, I will, devise and bequeath to my son Fred (certain described realty) in fee, and to my daughter Roxie J. Hitchcock (certain described realty) in fee."

The testator died March 14, 1886, and shortly thereafter said will, with the codicil annexed, was duly admitted to probate.   Subsequently the executor reported to the county court, that after payment of all claims, etc., he had in his hands $9214.05 for distribution under the residuary clause of the will, and asking an order of the court thereon.

The question presented by this record is, whether appellant, John A. Dickison, is entitled to participate in the distribution of that fund.   That he was a child of the testator, and therefore fell within the designation of persons who were to take under the residuary clause of the will, is conceded.   It must therefore be held that he is a distributee thereunder of the residuum in the hands of the executor, unless that clause is controlled by other portions of the will, so as to exclude him

from participation, and this must depend upon the intention of the testator as expressed in his will. The sole purpose of construction of the instrument is to find and declare the intention of the testator, that effect may be given to such intention when not contrary to public policy or in contravention of law or the rules of property. The construction depends upon the intention of the testator, to be ascertained from a full view of everything contained in the will, giving just weight and operation to each clause and word employed, unless there is some invincible repugnance, or some portion of it is absolutely unintelligible. 1 Redfield on Wills, 334, *et seq.; Caruthers* v. *McNeill,* 97 Ill. 256; *Kennedy* v. *Kennedy et al.* 105 id. 350; *Taubenhan* v. *Dunz,* 125 id. 529, and cases cited.

By the ninth clause of his will the testator devised to John A., (appellant,) and Mary Ann, his son and daughter, as tenants in common, the tract of land therein described, "*to be in full of their portion of my estate, both real and personal,* to be theirs, their heirs and assigns, forever." The language here employed is neither ambiguous nor unintelligible. If understood in their ordinary and popular significance, as they must be, except where technical terms are used, the words convey a definite and certain meaning. The word "portion," in its commonly accepted meaning, is the equivalent of part, share or division. (Worcester's Dic.) To be in full of their part or share or division of an estate, means to be the complete measure of such share, part or division. (Worcester.) The evident intention of the testator was, that the land devised was to be the complete measure of what these devisees should take or receive as their part, share, division or portion of his estate.

Nor is the construction less satisfactory if it be considered that the testator used the word "portion" in its technical, legal sense. Technically, a "*portion*" is defined to be "the part of a parent's estate, or of the estate of one standing in the place of a parent, which is given to a child." (Bouvier.) The devise would therefore be in full,—*i. e.,* the complete measure of,—.

the part of the testator's estate given or devised, or the provision made by the testator for these devisees.

The evident intention of the testator, as manifested by this clause of the will, was to limit the quantity of his estate to be taken or received by his son John A. and his daughter Mary A. to the specific devise of the land mentioned in clause nine. This intention is clearly and unambiguously expressed. The difficulty arises, however, not in respect of any uncertainty as to the intent expressed in this clause of the will, but because of the repugnancy existing between this and the eleventh or residuary clause. The latter clause provides, as we have seen, that all the rest and residue of the testator's real estate not specifically devised, and all his personal estate, shall be sold by his executor, and after paying debts, etc., the remainder be devided among his heirs as follows : to his wife one-third part thereof, "and the remainder to my children in equal portions, share and share alike, their heirs and assigns, forever, absolute." It will be observed that the testator here again uses the word "*portion*" as the equivalent of part or share.

It is apparent that if appellant and his sister Mary A. are held to be included in this general residuary clause, the provision of clause nine, that the land therein devised shall be in full of all they shall receive from the estate of the testator, is rendered nugatory. There is, therefore, it is said, repugnance between these two clauses, and that in such case the later provision must control. The rule is well established in this State, as elsewhere, that when the clauses of a will are irreconcilable and the repugnance invincible, the later clause will generally prevail. *Brownfield* v. *Wilson*, 78 Ill. 470 ; *Murfitt et al.* v. *Jessop*, 94 id. 158 ; 3 Jarman on Wills, 705 ; 1 Redfield on Wills, 443-445.

In matters of so great solemnity as making a testamentary disposition of property it can not be presumed that a testator would purposely make inconsistent provisions, incapable of being carried into effect. Unlike conveyance by deed, in which

35—138 Ill.

the first complete grant leaves nothing in the grantor to be subsequently conveyed, a will remains ambulatory, and the latest expressed intention is to be given operation. And as the testator might have changed his mind during the drafting of his will, there being no way of accounting for or removing the repugnancy, it will be presumed that he did, after writing the former clause, change his purpose, and that the subsequent clause gives expression to a later formed intention. The rule is adopted by the courts as an aid to finding the real intention of the testator as finally expressed in his will, and arises out of the very necessity of the case, and rests upon the single presumption of fact of change of intention while writing the will. The fundamental rule of construction being, as we have seen, that the intention is to be found from a consideration of the whole will, and such construction given as will uphold all of its provisions, and give to each clause and part its just operation and effect, it follows that the presumption of the fact, upon which the rule is predicated, will never be indulged or the rule applied until it is found, by the application of all other rules of construction, that the difficulty is unsolved, and the clauses remain invincibly repugnant. Redfield on Wills, 445-452, and cases cited; *Morrell* v. *Sutton*, 1 Phil. Ch. 532.

The tendency of modern American decisions, at least, is toward reconciling the apparent repugnancy, if possible, without adopting unreasonable or absurd constructions; so much so, that it is stated by the learned author just cited, "that it is now becoming very uncommon, with us, to hear a court declare a will, or any of its provisions, wholly inoperative by reason of repugnancy or uncertainty." (Page 453.) The rule, therefore, which sacrifices the former clause because inconsistent with a later one is never applied, except upon failure to give such construction as renders the whole will effective, and allows each provision to stand. Hence it has been held, that to enable the court to uphold all the provisions of the will, it is permissible to resort to every reasonable intendment,—to

reverse the relative order of the devises or bequests, and to transpose the different provisions of the will, if it be possible thereby to render them consistent and give effect to each. *Mutter's Appeal*, 38 Pa. St. 314; *Covenhoven* v. *Shuler*, 2 Paige, 122; *Pruden* v. *Pruden*, 14 O. N. S. 251; *Langman* v. *Sanford*, 19 Ves. 641; *Broklebank* v. *Johnson*, 20 Beav. 205; *Ridout* v. *Dowling*, 1 Atk. 419; *Hatfield* v. *Snider*, 42 Barb. 615; *Crissman* v. *Crissman*, 5 Ired. 498. And so, repugnant words, in whatever portion of the will they occur, which contravene the evident general purpose and intention of the testator as clearly expressed, may be rejected or transposed, or limited and controlled by other and prior provisions, and by the general purpose and intent thus clearly manifested. *Holliday* v. *Dixon*, 27 Ill. 33; *Watlington* v. *Waldron*, 4 DeGex, M. & G. 259; *Boon* v. *Cornforth*, 2 Ves. Sr. 277; *Jones* v. *Price*, 11 Sim. 557.

Further discussion of the general rule will be unnecessary, as we are not required to go to so great length in the construction of this will as many of the cases have gone. It is also a familiar rule in the construction of wills, that general provisions in a will must give way to specific provisions,—that where there is a general devise of property in one part of the will and a specific disposition of the same property in another part, these are to be regarded, generally, as excepted out of the general devise. (Redfield on Wills, 446, and cases cited.) Moreover, a general residuary clause, being ordinarily introduced by the testator to prevent intestacy as to any part of his estate, will generally be construed as intended for nothing more than a disposition of those portions of the estate not previously disposed of, and in such case the presumption of a change of purpose in the testator's mind while preparing his will can not arise. (Ibid.) The specific directions in the will, where the mind of the testator has been directly and intelligently directed to them, are much safer guides to his intention than general provisions, which do, by virtue of their generality, contravene the specific provision, but which might

or might not have been so intended. And especially is this so where, as in this case, the general provision is a residuary clause, which, as we have said, might, as it generally is, have been inserted with the sole view of the disposition of any residuum of the estate not before devised. Here the testator made specific devises to all his children, of land, and accompanied the devise to appellant, and his sister Mary Ann, with the express provision that the land devised was to be in full of their portion of his estate, both real and personal. Nothing can be clearer than the intention thus expressed that neither appellant nor Mary A. should participate in the estate of the testator further than the specific devise made to them. It was to be, as we have seen, the complete measure of all they should take out of the estate of the testator, "both real and personal," and excluding them from further participation. Following this clause comes a specific devise of other lands, without limitation, to another son, Griffith A., and then follows the general clause before quoted. By that clause the residue of the testator's property, real and personal, is to be sold, and after the payment of debts, to be divided, one-third to the testator's widow, Sarah A. Dickison, and the remainder to his children, share and share alike. It is apparent that in making this clause the testator intended especially to provide for his wife, giving her one-third of the residue, which she could not otherwise, as his widow, have taken without renouncing the previous specific provision for her benefit. The care taken in naming her evinces the solicitude of the testator in her behalf, undoubtedly arising from the fact, as shown by the record, that no formal marriage had been solemnized between them, and at most a common law marriage only existed, which might be contested. Beyond the naming of his then wife, no one else is named,—the residue is to be divided among his children without further designation. There are no other words indicating an intention to abrogate or destroy the limitation coupled with the devise to appellant.

It is much more probable that the testator introduced the residuary clause, primarily to protect his widow, and secondly, to give effect to the limitation coupled with the devise in the ninth clause of the will, by preventing any portion of his estate from becoming intestate estate, and distributable to his heirs, including appellant, than that he had changed his· purpose ·after the writing of, the second preceding clause. Especially is this so when we consider that all that portion of clause nine repugnant to the residuary disposition could have been erased or expunged without in the least affecting the specific devise made. The intention of the testator must control when it can be ascertained, and we are of the opinion that it is clearly manifest that the testator intended to exclude appellant from participation in his estate beyond the specific devise made to him. The will, taken and considered as a whole, leaves no serious doubt of that intention. The testator had just previously excluded appellant from participation in any residue of his estate then existing or thereafter to be acquired, and undoubtedly, having in mind this provision, made the general provision subject to it.

Nor is this rendered less certain by the codicil made by the testator. It is true that he therein says that he had, in and by his will, "made devises to all my children then born;" but the purpose of the codicil, and to what devises the testator referred, is clearly apparent. Thereby he makes a specific devise to a son born subsequently to the making of the original will, and of the same kind as those specifically made to his other children. Indeed, he takes, by the codicil, the land specifically devised to his daughter Roxie by the will, and gives it to the after-born son, and in lieu thereof specifically devised another tract of land to the daughter. He had, as is said in the codicil, by his will made devises to all of his children. He had specifically devised to each a tract or tracts of land, as he was then doing for his younger son, born after the making of the will, and to such specific devises alone the lan-

guage of the codicil may be referred. It was these he manifestly had in mind, and to which his attention was attracted in making like provision for his other and after-born child.

We are of opinion that the provisions of this will clearly evince an intention to exclude appellant from participation in any residue of his estate, and that the Appellate Court held correctly in excluding him from participating therein.

The judgment of the Appellate Court affirming the decree of the circuit court is affirmed.

*Judgment affirmed.*