### ESTATE OF FRANZ E. BEHRMANN, DECEASED.
[No. 11,397; decided March 28, 1892.]

**Wills.—Every Portion of a Will must be Made to have Its Just Operation,** unless there arises some invincible repugnance, or else some portion is absolutely unintelligible.

**Wills—Transposition of Words.—Words or Clauses of Sentences,** or even whole paragraphs of a will, may be transposed to any extent with a view to show the intention of the testator.

**Wills.—An Interlineation in a Will is the Most Significant** part of the line, and where a clause as originally written is clear, and the testator subsequently makes an interlineation, it must be assumed that he intended to make the sentence convey a meaning which it did not theretofore express.

**Wills—Interlineations—Death of Legatees.—Where two** legatees named in a will died after its execution, and the testator thereafter noted the fact of their death in his will, and the sums bequeathed to such legatees equal the amount which will go to other legatees if effect is given to an interlineation in that part of the will containing the bequests to them, the inference is strong that by such interlineation the testator meant to transfer to such legatees the bequests originally made to the legatees who died after the execution of the will.

**Wills—Construction in Favor of Validity of All Parts.—Where a** testator has heirs, and his language will admit of two constructions, one of which will make all the provisions of the will valid, and the other of which would result in creating a legacy to a charitable society in excess of one-third of his estate, which legacy would be void as to such excess under the statute, it will not be presumed that he intended to make a partially invalid bequest, and the court will adopt that construction which is in harmony with the law of wills.

Franz E. Behrmann died on September 19, 1891, and on October 23, 1891, Isaac Hecht, then president of the General German Benevolent Society, was appointed executor of his last will. On March 2, 1892, the executor filed a petition for distribution wherein he requested the Court to construe the clause of the will separately set forth in the opinion of the court.

A. Heynemann, for executor.

Robert Harrison, for certain legatees, children of H. H. Behrmann.

COFFEY, J. The contention here is upon the construction of a single clause in the will.

Do the children there named take $500 each, or $500 divided between them, under the clause in the will:

to each
"And $500 (five hundred dollars) in equal parts, to Anna and Christina and Heinrich Behrmann, the other children of Hans Heinrich Behrmann, payable when the youngest, Heinrich, is 21 years old, with interest."

The will is olographic, written in the German language with pencil, with erasures and interlineations in penciling of different colors, and with an original date erased and a subsequent one interlined. A translation is here inserted:

"1st of April 1880.
"San Francisco, the ~~1st of October, 1879.~~

"I, Franz Ernst Behrmann, in full intellect and good health, determine hereby that after my death, as follows, about my property and money disposed, be ~~as follows:~~

~~German~~
~~I bequeath to the General Benevolent Society $500, five hundred Dollars, payable as soon as possible~~

"My brother, Hans Heinrich Behrmann, now residing Hall's Ranch          Cal.
at Duplin Alameda County, $5 (five dollars), to his son, Franz Ernst Behrmann $500 (five hundred dollars), payable when the same is twenty-one years old, with interest

what the' five hundred dollars have produced, and $500
to each
(five hundred Dollars) in equal parts, to Anna and Chris-
tina and Heinrich Behrmann, the other children of Hans
Heinrich Behrmann, payable when the youngest, Hein-
dead
rich, is 21 years old, with interest. And my ~~sister, Mar-
garetha Behrmann,~~ married with Heinrich Bade, now re-
siding at Pleasanton, Alameda County (Cal.), $500 (five
hundred dollars), payable as soon as possible, and the
daughter of Heinrich Bade, and Margaretha Bade, nee
Behrmann, called Margaretha Bade, $500 (five hundred
dollars), payable when the same is 21 years old, with in-
dead
terest, and my father, Johann Heinrich Behrmann $500
(five hundred dollars), should the same be dead when I die,
~~it shall fall to the General German Benevolent Society at
San Franco.~~

"And my brother Johannes Behrmann, living in the Hollm,
Hollstein, $500, payable at once.

"And to the Mrs. Anna Theiss, or Mr. Heinrich Theiss,
$300 (three hundred dollars), payable at once, and what is
then still on hand to the A. D. U. Society.

"I appoint as Executor the present President Mr. Julius
Bandmann or his successors of the General German Benevo-
lent Society.

"F. E. BEHRMANN.

"The watch and chain shall go to F. E. Behrmann, the son
of Heinrich Behrmann."

No question has been raised save that of the meaning of
the above-quoted clause; it being conceded that the intent of
testator, so far as expressed in or to be gathered from the
will, shall govern.

"There is perhaps no rule of construction of more univer-
sal application to wills, or which oftener requires to be acted
upon, than that every portion of the instrument must be
made to have its just operation, unless there arises some in-
vincible repugnance, or else some portion is absolutely unin-
telligible.

"There is no more clearly established rule of construction, as applicable to wills, than that words or clauses of sentences, or even whole paragraphs, may be transposed to any extent, with a view to show the intention of the testator. . . . . Where it gives effect to all the provisions of the will, and renders them all harmonious and consistent, both with each other and with the general purpose and intent of the will, it affords very satisfactory ground of presumption that it reaches the source of the difficulty and explains the mode in which it arose": 1 Redfield on Wills, p. 431.

The clause, "without the interlined words," very accurately, precisely and plainly gives the children $500, to be divided between them "in equal parts." The clause did not require—would hardly permit—anything additional to make that meaning plainer to a mind of ordinary intellectual capacity.

We must, therefore, assume that the writer intended by the interlineation to make the sentence convey a meaning which without the interlineation it did not express.

An interlineation is the most significant part of a line. In reading the sentence as first written, the writer discovers uncertainty, ambiguity or a declaration the very reverse of his intent, and then, necessarily alert and deliberate, and cautiously accurate to the extent of his power of expression, interlines the word or words necessary to make his meaning plain. The interlineation thus made becomes the very accentuation of his meaning. Under the rule of law before cited we must give the interlined words their due meaning as part of the sentence, and herein,

1. The meaning of the original clause was to be affected by the interlined words;

2. If the original sentence was ambiguous, the interlineation may have been for the purpose of making it clear, but,

3. If that sentence was already clear, the interlineation must have been made for the purpose of changing or reversing that clear meaning.

What change of meaning was intended to be made by the interlined words?

The testator had evidently computed the value of his estate.

Originally he gave money legacies aggregating $3,805, including a specific sum of $500 to the German General Benevolent Society. Afterward he made the following changes:

First. Erased specific bequest to the Benevolent Society, and made it the residuary legatee: "What is then on hand."

Second. Interlined fact of his sister's death and erased her name.

Third. Interlined fact of his father's death.

Fourth. Erased provision that lapsed legacy to father should "fall" to General Benevolent Society.

Fifth. Interlined the words "to each" after bequest of "five hundred dollars" to Behrmann children.

The "first" change shows (1) that the extent of testator's contemplated bounty to the General Benevolent Society was $500, and (2) that in case of insufficiency of assets the society should be the first sufferer.

The "second" change merely shows his knowledge of his sister's death, and that he now has $500 either undisposed of, or to go to the residuary legatee.

The "third" change evidences his knowledge of his father's death, and that now he has another $500 thrown back to him which will "fall" to the General Benevolent Society unless the will be further changed.

The "fourth" change indicates an intent that the lapsed legacy of his father shall not "fall" to the society. But, despite that seeming intent, the lapsed legacies will "fall" to the General Benevolent Society as residuary legatee unless he otherwise disposes of the lapsed sums.

The "fifth" change disposes of those sums.

Bearing in mind that the testator's intent to limit his benefaction to the General Benevolent Society to the sum of about $500 is very plainly to be inferred from the will, the significance, intent and meaning of the fifth change is evident.

Testator finds that by the death of his sister $500 is thrown back to him to be otherwise disposed of. Later, that by the death of his father another $500 destined for his own blood is left without a specific donee. He thus realizes that $1,000, intended for his own people, will go to a miscellaneous charity unless otherwise disposed of. Now is the moment of final consideration.

All the legatees who were specially provided for—all save the residuary charity which is to get "what is then left on hand"—are his kith and kin; his father, his brother, his sisters and his brother's or sister's children. He had divided his little fortune with as much evenness as the limits of that fortune would permit. It was $500 all around, save to the younger Behrmann children. To give $500 to each of the others and have something approaching a like sum still "left on hand" for the Benevolent Society, he had been obliged to give his favorite sum of $500 "in equal parts" to them. But he now perceives that he may give $500 "to each" and still have "left on hand" something over $500 for the society. There is an unexpected surplus of $1,000—what shall he do with it? Let it go to a general miscellaneous charity, the beneficiaries of which must necessarily be to him entire strangers, even their identity always unknown, or shall he give to his own—the blood of his father and of his mother—whom before he had been obliged to discriminate against in his bounty? He is no longer obliged to so discriminate. He may now place each of those children on a par with his other nephews and nieces, and still have sufficient left for his outside bounty—to satisfy his intellectual fad of providing for a public charity, and yet respond to his heart promptings towards his own. He did not hesitate nor consider long. The same pencil that interlined above his father's name, "dead," and erased the line giving that dead father's legacy to the Benevolent Society, interlined over "$500" that "to each" of his brother's children that equal sum should go.

Does not this interpretation "give effect to all the provisions of the will, and render them all harmonious and consistent, both with each other and with the general purpose and intent of the will"? And does it not "afford very satisfactory ground of presumption that it reaches the source of the difficulty and explains the mode in which it arose"?

The calculations of the testator as to the extent of his estate proved very accurate. The estate was appraised at about $4,300, and Mr. Isaac Hecht, president of the German Society, the careful and prudent executor of his will, now reports a cash balance, ready for distribution, of $3,971. With the

total legacy list of $3,305 paid, a residue of $666 will still be "left on hand" for the residuary legatee.

Does not this interpretation prove itself—even to a demonstration?

The interpretation sought, or suggested, by the residuary legatee is based upon a strict grammatical construction of the sentence, "after it had undergone some significant changes," thus: "and five hundred dollars to each in equal parts, to Anna and Christina and Heinrich," etc.

The obstacles to that interpretation, under the rules quoted from Redfield, are many.    Among them are:

1. It dislodges from its proper position of prominence and significance the interlined words "to each."

2. It gives no weight to the fact that those words were interlined some time after the body of the will had been written —probably with the same pencil which had expressed testator's knowledge of his sister's and his father's death.

3. It gives no consideration to the fact that the sentence "without the interlined words" very accurately and plainly expressed the meaning claimed by that interpretation.    It would necessarily ignore the words "to each," either as interlined words, or as part of the sentence as originally written, and thus violate the rule that each word "must be made to have its just operation."

4. It interpolates a comma.    In the circumstances it might, with no less violence, supply a whole sentence.

Give to counsel for the children the control of the comma, he would place it thus: "and five hundred dollars to each, in equal parts to Anna and Christina and Heinrich," etc.

There is no ambiguity in the meaning of the sentence so punctuated, whether the words "to each" have been interlined or placed in line when first written.

A like sentence in the will of Mme. Bertha Berton did not give the court even a question as to its meaning: Estate of Bertha Berton.    "I desire to give to my only two beloved children . . . . the summe of ten thousand dollars each, share and share alike."    The court says: "In the will above quoted it appears that, after giving to each of her children ten thousand dollars, she undertakes," etc.

With an ambulatory comma, which could have been stopped at "dollars," so as to precede instead of follow the word "each" in above sentence from Mme. Berton's will, what a changed meaning that sentence would express. And suppose that Mme. Berton, like Mr. Behrmann, had used no commas at all?

5. It is not consistent with the erasure of name of General Benevolent Society from the provision that legacy lapsed by death of father should "fall" to that society, made by testator after learning of his father's death.

6. It is not in harmony with the general purpose of testator, expressed throughout whole will, to provide primarily for his own kin, and secondarily, only, for a public charity to the maximum extent of $500, when we contemplate that testator knew of the lapsing of $1,000 at or before he made the various erasures and interlineations noted.

7. It applies strict grammatical rules to an ungrammatical will.

It is apparent that testator was not a man of accurate literary expression. He was either careless or unskilled in phrasing, or imbued with that not uncommon superstitious reverence for one's last testament which considers even its touching, much less its tampering with, a sort of sacrilege to be committed only when, and to the extent, absolutely necessary. Instance:

a. Erases sister's name, but leaves bequest to stand.

b. Merely marks "dead" over father's name, leaving bequest to stand.

c. Merely erases name of German General Benevolent Society from provision, making lapsed legacy of father fall to it, leaving remainder of sentence to stand without meaning or relevancy.

d. Uncertainty of bequest to the Theisses.

e. Uncertainty as to identity of residuary legatee: "what is then left to the A. D. U. Society." (Allegemeïne Deutsche Unterstützungs Gesellshaft.)

f. Uncertainty of identity of executor of his will, which required decree of this court to determine it, which decree was in favor of Mr. Hecht, the present president of the German General Benevolent Society.

It does not seem to have occurred to counsel that a view contrary to that of the court would have given to the residuary legatee, a charitable society, an amount in excess of the statutory limitation. If Mr. Heynemann's interpretation be the true one, then more than one-third of the estate would be bequeathed to a benevolent purpose, contrary to the force, form and effect of the statute in such case made and provided: Civ. Code, sec. 1313.

This is a mere matter of mathematics, easily solved by reference to the amount of the estate and of the residuum according to Mr. Heynemann's construction.

The foregoing views having been adopted by the court, a decree of distribution in accordance therewith was made.

---

**In Reading a Will Courts do not Hesitate to Transpose Words**, supply omitted ones, and reject those that are repugnant, when necessary to do so in order to give effect to the evident meaning and purpose of the testator: Estate of Wood, 36 Cal. 75; Mitchell v. Donohue, 100 Cal. 202, 38 Am. St. Rep. 279, 34 Pac. 614; Estate of Stratton, 112 Cal. 513, 44 Pac. 1028; Dickison v. Dickison, 138 Ill. 541, 32 Am. St. Rep. 163, 28 N. E. 792; Rose v. Hale, 185 Ill. 378, 76 Am. St. Rep. 40, 56 N. E. 1073; Gilmor's Estate, 154 Pa. 523, 35 Am. St. Rep. 855, 26 Atl. 614. However, a court cannot reform a will after the death of the testator: Estate of Callaghan, 119 Cal. 571, 51 Pac. 860, 39 L. R. A. 689; nor can it transpose words or provisions therein so as to change the import and meaning, when the intention of the testator can be discovered from an examination of the instrument as it is written: Estate of Schedel, 73 Cal. 594, 15 Pac. 297; Adair v. Adair, 11 N. D. 175, 90 N. W. 804.