(No. 15247.—Decree affirmed.)

MARGARET R. ANDREW BRADFORD, Appellant, *vs.* JOSEPH
ANDREW *et al.* Appellees.

*Opinion filed June 20, 1923.*

1. WILLS—*when will takes effect as execution of a power.* A
will takes effect at the death of the testator or testatrix, and until
that event it does not become effective as an execution of a power.

2. SAME—*when will creates life estate with general power to
convey fee.* Where a testator devises all of his property to his wife
"for and during her lifetime," and provides that at her death one-
half of all property remaining shall go to his brothers and sisters
and the other half as the wife may "decree by will or deed," the
wife takes only a life estate, and the general power to convey half
of the remaining property does not enlarge the life estate into a
fee in one-half.

3. SAME—*property goes to heirs of donor upon the failure to
execute general power of appointment.* If the donee of a general
power of appointment of a remainder after a particular estate fails
to exercise the power and there is no limitation in default of the
execution of the power, the heirs of the donor of the power will
be entitled to the property.

4. SAME—*disposition of property upon lapse of devise in execu-
tion of general power.* If the donee of a general power of appoint-
ment appoints by will to a person or persons, all or some of whom
die in the donee's lifetime, the property or shares of those so dying
will revert to the donor's heirs in the absence of any intention of
the donee to the contrary; but where it appears from the donee's
will that she meant, in the first place, to treat the property as part
of her own estate by virtue of the donation of the power and de-
vises it as her own, the heirs of the donee will take the property·
if there is a lapse of the devise.

5. SAME—*technical language need not be used in a will.* No
technical language is necessary in a will, as the words will be con-
strued in their ordinary meaning and according to the sense in
which they are generally understood, unless controlled by the con-
text or circumstances shown by the evidence.

6. WORDS AND PHRASES—*meaning of the word "comprise."* The
word "comprise" means to comprehend, include and cover, or to
embrace.

APPEAL from the Circuit Court of Mason county; the
Hon. GUY R. WILLIAMS, Judge, presiding.

NORTRUP, NORTRUP & HAYES, and D. W. & A. S. IDD-
INGS, for appellant.

W. A. COVEY, guardian *ad litem*, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

By his will executed on March 3, 1896, Robert A. An-
drew disposed of his property as follows:

"I want all my just debts paid, including my funeral
expenses.

"I give, devise and bequeath to my beloved wife, Han-
nah S. Andrew, after my debts are paid, all my property,
both real estate and personal property, wherever it may be
found, for and during her lifetime, and at her death one-
half of the real estate and personal property remaining shall
be divided among my brothers and sisters or their heirs,
and the other half as my wife, Hannah S. Andrew, decree
by will or deed."

The testator died on October 21, 1910, and his will was
admitted to probate. · His estate was settled and the ad-
ministrator with the will annexed was discharged, having
delivered the personal estate to Hannah S. Andrew, the
widow. She went into possession of the real estate and
continued to possess it until her death, on April 12, 1922.
She had executed a will, which was admitted to probate, in
which, after directing the payment of her debts and a legacy
of $1000, she disposed of the residue of her estate by the
third clause, as follows:

"I give and devise all the rest and remainder of my es-
tate, both real and personal, as follows, to-wit: A one-
eighth part thereof to the children of my deceased brother
Frank Berryhill; a one-eighth part thereof to the children
of my deceased brother Jackson Berryhill; a one-eighth
part thereof to the children of my deceased brother E. B.
Berryhill; a one-eighth part thereof to the children of my
deceased brother Aaron Berryhill; a one-eighth part there-

of to the children of my deceased brother Lemon Berryhill; a one-eighth part thereof to the children of my deceased sister, Matilda Belschford; a one-eighth part thereof to my brother Lee Berryhill; a one-eighth part thereof to my brother A. P. Berryhill. By this clause of my will it is intended, and I so hereby declare, that the same shall comprise, in addition to the property which I have in my own name, all property devised to me by and under the terms of the last will and testament of my deceased husband, Robert A. Andrew, who departed this life testate in Mason county, Illinois, and whose will was duly admitted to probate and record, the said estate so devised to me by said will being one-half part of all of his estate, and this devise is made under and by virtue of the authority therein given me in said will to devise said one-half of his estate of which he died seized, which will was admitted to probate by the county court of Mason county, Illinois."

Lee Berryhill died in the lifetime of the testatrix. Margaret R. Andrew Bradford, a sister of Robert A. Andrew, filed a bill in the circuit court of Mason county for a construction of the two wills, and being dissatisfied with the construction given by the court, which was that the share of property appointed to Lee Berryhill goes to the heirs of Hannah S. Andrew, has appealed from the decree, claiming that the share so appointed should go to the heirs of Robert A. Andrew. This is the only question for our decision.

It was the obvious intention of the testator to give to his wife the use of the whole of his property during her life and that the remainder after her death should be disposed of, one-half by him and one-half by her. He gave her as complete control of one-half the property as if she had been the owner in fee simple. She could exercise her general power of appointment at any time by a conveyance or appointment of the property, or any part of it, by deed to herself or anybody else, or at her death by will, for the benefit of herself or·anybody else. If she failed to exercise

the power as to the remainder or any part of it, the whole, or the part as to which the power of appointment was not exercised, not having been disposed of by the will of the testator, would descend to his heirs. The contention of the appellant is that so far as the one-eighth devised to Lee Berryhill is concerned the will was inoperative, because by his death in her lifetime the devise lapsed, and her will having made no provision for the disposition of a lapsed share, there was no appointment as to that one-eighth; that since her husband's will made no devise in default of appointment there was an intestacy as to that share and it descended to the heirs of the husband.

It is argued in support of the decree that immediately upon the execution of the will of the testatrix the property was appointed and transferred by that act from the estate of Robert A. Andrew to the estate of Hannah S. Andrew, and that the lapsed share upon the death of Hannah being a part of her estate, descended to her heirs. We cannot assent to this proposition. Her will did not take effect in her lifetime. Until her death it was subject to revocation, and in that case would have been of no more effect than if it had never been written. The will must be construed as taking effect at the death of the testatrix, and it did not become effective as an execution of the power until that event. The real question for determination is, therefore, the effect of the will as an appointment at the date of her death.

The estate of the testatrix was only a life estate. The language of her husband's will so defined it, and the creation of the life estate prevents the power from enlarging the estate to a fee. (*Fairman* v. *Beal,* 14 Ill. 244; *Hamlin* v. *United States Express Co.* 107 id. 443; *Kirkpatrick* v. *Kirkpatrick,* 197 id. 144.) In *Gilman* v. *Bell,* 99 Ill. 144, there was a devise to Ellen A. Bell for the life of her husband and after his death in trust to convey to his heirs, but with power in the husband to require her to convey the estate

to him or to any other person. Although there had been no execution of the power, a judgment creditor of the husband sought by bill in equity to subject the property to the payment of his judgment, but it was held that the husband took no interest, either legal or equitable, in the property by the will but was only the donee of a power to appoint in favor of himself or others. The court recognized the English doctrine that equity will not aid creditors where there has been no execution of the power, but will aid a defective execution in favor of a purchaser, creditor, wife or child, and will seize the fund and apply it to the debts of the donee of the power where a power has been executed in favor of a volunteer. It was said that "no title or interest in the thing vests in the donee of the power until he exercises the power. It is virtually an offer to him of the estate or fund that he may receive or reject at will, and, like any other offer to donate property to a person, no title can vest until he accepts the offer. Nor can a court of equity compel him to accept the property or fund against his will, even for the benefit of creditors. If it should, it would be to convert the property of the person offering to make the donation to the payment of the debts of another person. Until accepted the person to whom the offer is made has not, nor can he have, the slightest interest or title to the property. So the donee of the power only receives the naked power to make the property or fund his own, and when he exercises the power he thereby consents to receive it and the title thereby vests in him, although it may pass out of him *eo instanti* to the appointee; and when the appointee is a volunteer, the court holds that he by the appointment endeavors to misapply his property to defraud his creditors; that he must be just before he is generous. This seems to be the reason upon which the cases proceed."

Under American and English decisions which have been cited by counsel upon either side these rules may be regarded as established:

(1) If the donee of a general power of appointment of the remainder after a particular estate fails to exercise the power and there is no limitation in default of the execution of the power, the heirs of the donor of the power will be entitled to the property. *Harrison* v. *Battle,* 21 N. C. 213; *Bond* v. *Moore,* 90 id. 240.

(2) If the donee of a general power of appointment appoints by will to a person or persons, all or some of whom die in the testator's lifetime, in the absence of any intention to the contrary the property, or the shares of those so dying, will revert to the donor's heirs. *Harker* v. *Reilly,* 4 Del. Ch. 72; *Colthurst* v. *Colthurst,* Jones' Exch. (Ireland) 262.

(3) In all such cases, however, where there is a general power of appointment, the question whether the property appointed by will to persons dying before the testator goes to the heirs of the donor or of the donee of the power is a question of the intention of the donee of the power. *In re Davies' Trusts,* L. R. 13 Eq. 163; *In re DeLusi's Trusts,* L. R. 3 Ch. 232; *Kelly* v. *Boyd,* 2 Ch. (1892) 232.

(4) Where an appointment under a general power has been made to the donee's executor or to trustees for the use of beneficiaries, one of whom has died, the exercise of the power is valid as to the share of the beneficiary dying; in the first case as an appointment to the estate of the donee of the power, in the second as a resulting trust in favor of his estate. *In re Davies' Trusts, supra; In re VanHagan,* L. R. 16 Ch. Div. 18; *Chamberlain* v. *Hutchinson,* 22 Beav. 444; *In re Pinede Settlement,* L. R. Ch. Div. (1879) 672.

(5) Where there is no intervention of a trustee and an appointment has been made by will directly to beneficiaries, one of whom has died in the lifetime of the testator, the donee of the power, if it appears from the will that the donee meant in the first place to make the fund for all purposes his own and in the next place to dispose of it in a particular way, if he dealt with the property appointed as

his own, combining it with his own property and treating it all as his own, without distinction, then the fund will be held to go to those persons who take the property of the donee. *In re DeLusi's Trusts, supra; Willoughby-Osborne* v. *Holyoake,* 22 Ch. Div. 238; *Coxen* v. *Rowland,* 1 id. (1894) 406; *Ickeringill Estate,* 17 id. (1881) 151; *Marten-Shaw* v. *Marten,* 1 id. (1902) 314.

The object of the construction of a will is to give effect to the intention which the testator has expressed by the words he has used, considered in the light of the surrounding circumstances. There is no evidence that the testatrix was legally the owner of property of any great value. She had the control, as completely as if she owned them, of lands, personal property and the home in which she lived, of considerable value. Doubtless she regarded herself as the owner of one-half of all the property in her possession. It was to this property which she referred in the third clause of her will, whereby she devised "all the rest and remainder of my estate, real and personal." So far as the evidence discloses, this was all the estate she had. To make clear what she included in the term "my estate," she stated that by this clause of her will she intended to comprise, in addition to the property which she had in her own name, all property devised to her by her husband. Her husband devised her no property but a life estate, which, of course, she could not convey by will. But her language makes it perfectly clear that her will comprised in the expression "my estate," all the property that she was authorized by her husband's will to dispose of. "Comprise" means to "comprehend," "include and cover," "embrace." Her will comprised, included and embraced in her property that which she was authorized by her husband's will to dispose of. She treated all this property together as her own absolutely and disposed of it all as a part of her estate. She did not use the word "appoint," or "convey," or "decree," (the word used in her husband's will,) but the word "give." No tech-

nical language is necessary in a will, the words of which will usually be construed in their ordinary meaning and according to the sense in which they are generally understood, unless controlled by the context or circumstances shown by the evidence. The substantial intention expressed in the words of this will is, that the testatrix gives the rest of her estate as follows: * * * comprising (including) as well that held in her own name (independent of her husband's will) as all property devised to her by her husband. In *Gilman* v. *Bell, supra*, it was stated that the donee of the power only receives the power to make the property his own, and by the exercise of the power he thereby consents to receive it, and the title vests in him though it may pass out of him at 'the same time to the appointee. Whether this statement be regarded as strictly accurate or not, it is clear that the testatrix here regarded the property over which she held the power as her own and that by her will she intended to so "decree." The question in all cases of this class is said in *In re Pinede Settlement, supra*, to be "one of intention, namely, whether the donee of the power meant by the exercise of it to take the property dealt with out of the instrument creating the power for all purposes, or only for a limited purpose of giving effect to the particular intention expressed." It may be said of the will here as of the will which was under consideration in that case, that it does evince an intention on the part of the testatrix to treat the whole of the property as hers and make it her own, and though one of the devisees does not take because he died in the lifetime of the testatrix, yet the property is to be dealt with as the testatrix's own property, and consequently her heirs are entitled.

The decree is affirmed.

*Decree affirmed.*