Spencer H. Logan, as Successor Trustee Under Trust Agreement Dated December 29, 1939, and Known as the Logan Real Estate Trust, Plaintiff-Appellee, v. Harris Trust & Savings Bank, as Executor of and Trustee Under Last Will of Stuart Logan, Deceased; William R. O'Donnell, Individually and as Executor of and Trustee Under Last Will of Stuart Logan, Deceased; Shirley Schoeller et al.; Continental Illinois National Bank & Trust Company of Chicago, as Executor of Last Will of Harriet E. Montgomery, Deceased; Judith M. Nichols et al., Defendants. Harris Trust & Savings Bank, as Executor of and Trustee Under Last Will of Stuart Logan, Deceased; William R. O'Donnell, Individually and as Executor of and Trustee Under Last Will of Stuart Logan, Deceased; Gladys Terbell Busk et al.; Continental Illinois National Bank & Trust Company of Chicago, as Executor of Last Will of Harriet E. Montgomery, Deceased; Judith M. Nichols et al., Defendants-Appellees. Shirley Schoeller and Phoebe Logan, Defendants-Appellants.

Gen. No. 46,542.

First District, Second Division.

November 22, 1955.

Released for publication December 14, 1955.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago, for appellant, Shirley Schoeller; Isham, Lincoln & Beale, of Chicago, for appellant, Phoebe Logan;

Weymouth Kirkland, Bartlett S. Marimon, James P. Dillie, Georges H. Dapples, Arthur C. Gehr, and Edward G. Proctor, all of Chicago, of counsel.

Haight, Goldstein & Haight, and McBride & Baker, all of Chicago, for certain defendants-appellees; George I. Haight, Chas. H. Lerch, Edward H. Baker, Jr., and Robert B. Gerrie, all of Chicago, of counsel; Dallstream, Schiff, Hardin, Waite & Dorschel, of Chicago, for appellee, Loraine Felton; Louis Hardin, of Chicago, and Dwight W. Croessman, of Oaklawn, of counsel; McBride & Baker, of Chicago, for certain appellees, Continental Illinois National Bank & Trust Company of Chicago, as Executor, Harriet W. Phelps, and Judith C. Wietz.

JUDGE ROBSON delivered the opinion of the court.

This is an action filed by plaintiff, Spencer H. Logan, trustee of an inter vivos trust, in the nature of an interpleader for construction of the last will and testament of Stuart Logan, deceased. The issue presented to the trial court was whether Stuart Logan by his will exercised a power of appointment over his interest in an inter vivos trust. The trial court held that there was a conflict between Articles Fourth and Thirteenth of the will, and it resolved this conflict by holding that the decedent exercised his power of appointment and that the interest appointed passed under the residuary clause of the decedent's will. Defendants Phoebe Logan and Shirley Schoeller, children of the deceased, prosecute this appeal from the decree of the trial court.

Two questions are presented for our decision on this appeal. The first is the construction of the will, the second whether the attorneys' fees allowed by the trial court to the respective parties were excessive.

The facts relevant to the first point are that on December 29, 1939, a declaration of trust known as the

Logan Real Estate Trust, was entered into by Spencer H. Logan, Waldo H. Logan and Stuart Logan, as beneficiaries, and Stuart Logan as Trustee. Article Third of the Trust Agreement provides in part as follows:

". . . in case of the death of any beneficiary hereunder during the existence of this trust, his right and interest hereunder shall, except as herein otherwise specifically provided, pass as he may direct or appoint in his Last Will and Testament; and, in default of any such appointment, then the right and interest of any beneficiary hereunder shall pass to the children of such deceased beneficiary, share and share alike, . . ."

Stuart Logan died testate on October 27, 1952. He left surviving him as his only heirs his three children, Shirley Schoeller, Phoebe Logan and Loraine Felton. His last will and testament and codicils two and three thereto were duly admitted to probate by the Probate Court of Cook County on December 8, 1952. In codicil three he bequeathed and made gifts to certain beneficiaries, some of the appellees here, of a specific percentage of his net distributable estate. Their interest will be increased slightly if we determine that the power of appointment was exercised and passed under the residuary clause. Whether the children take as intestate heirs or under the Logan Real Estate Trust free of the testamentary trust does not involve any relatively substantial amount.

Article Fourth of Stuart Logan's last will and testament provides as follows:

"Fourth: I direct my executors to divide the entire rest, residue and remainder of my estate, of all kinds and character whatsoever and wherever situated, belonging to me at the time of my death or in which I have any interest, including all lapsed legacies, but expressly excluding any property over which I may now or hereafter have a power of appointment, into three equal portions which, for the purposes of identi-

65

fication, I now designate as the Shirley Schoeller portion, the Phoebe Logan portion and the Loraine Felton portion. Provided, however, that the said Loraine Felton portion shall include as a part thereof all of the capital stock of, and all other interest of whatever kind and character I own and have in and to the Coca-Cola Bottling Company of Salt Lake City, Utah, and the Coca-Cola Bottling Company of Provo, Utah."

Articles Fifth and Sixth of said will give, devise and bequeath the three portions referred to in Article Fourth to trustees for the beneficiaries therein designated.

Article Thirteenth of said will is as follows:

"Thirteenth: In the event the trustees or executors should desire to sell my interest as beneficiary under the Logan Real Estate Trust created December 29, 1939, the principal asset of which trust is the real estate known as 1150 Lake Shore Drive, Chicago, Illinois, I direct that they shall give to my brother, Spencer H. Logan, of Great Barrington, Massachusetts, a reasonable opportunity to purchase the same if he be willing to pay therefor an amount at least equal to the highest bid offered therefor by any bona fide prospective purchaser. I request that prior to any sale of such beneficial interest, said executors or trustees consult with my brother, Spencer H. Logan, as to the propriety of such sale and the proposed price to be obtained. But this request is in no way in derogation of any of the powers of my executors or trustees to sell said beneficial interest."

On January 12, 1953, subsequent to the death of Stuart Logan, the trust property, i. e., 1150 Lake Shore Drive, Chicago, Illinois, was sold by plaintiff Spencer H. Logan, as trustee.

All parties agree that Stuart Logan's estate is valued at approximately $600,000, excluding the value of his

66

interest in the Real Estate Trust which is presently valued at approximately $65,000.

At least three possible interpretations of Stuart Logan's will were presented to the trial court. They are as follows:

1. Article Thirteenth manifests testator's intention to exercise his power, modifies the exclusion clause in Article Fourth and the interest subject to the power, except for the portion which passes under the provision of the Third Codicil, goes into the residue.

2. Article Thirteenth manifests testator's intention to exercise his power but Article Fourth excludes the interest subject to the power from the division of the residue and, except for the portion that passes under the provisions of the Third Codicil, the interest goes intestate.

3. Articles Fourth and Thirteenth are irreconcilable; Article Fourth conclusively negatives Article Thirteenth and the latter is meaningless and without effect.

The trial judge adopted the first interpretation. He found the questioned articles irreconcilable, that Article Thirteenth was specific and later in time than the general expression of the testator's intention in Article Fourth, and that Article Thirteenth superseded Article Fourth. He decreed that Article Thirteenth modified the exclusion clause in Article Fourth and constituted an exception thereto; that the interest subject to the power therefore passed as part of testator's estate and as part of the threefold division of the residue.

Appellants first adopt the third interpretation. They argue (a) that Article Fourth's exclusion clause negatives conclusively the purported intention in Article Thirteenth to exercise the power; but if not, and the purported exercise was intended to effect a different

67

trust purpose, then (b) it failed and is meaningless because no gift or bequest of the interest subject to the power was made and no appointee was named. Moreover (c) even if we should find that Article Thirteenth discloses testator's intention to exercise his power, since it failed because no disposition was made of the interest, it passes intestate to testator's heirs at law, who are the same persons to take the property in the absence of an exercise of the power.

Appellees have adopted the first interpretation which was the one adopted by the trial court.

It has been said that the testator's intention to exercise his power is demonstrated (1) where he refers to his power, or (2) to the property subject to the power, or (3) where the will would be inoperative without the aid of the power. His intention, nevertheless, to exercise the power, however manifested, governs these altogether subordinate and secondary rules. Funk v. Eggleston, 92 Ill. 515; Rettig v. Zander, 364 Ill. 112; Northern Trust Co. v. Cudahy, 339 Ill. App. 603. His intention is sought in and derived from the whole will, so that the clause in Article Fourth of the will in the instant case reading "but expressly excluding any property over which I may now or hereafter have a power of appointment," must be considered together with and in relation to every part and provision of the will. Weilmuenster v. Swanner, 404 Ill. 21.

The rule that a later clause of a will prevails over an earlier where they are in irreconcilable conflict arises from necessity and rests upon the single presumption of fact that the testator changed his intention while writing the will. This is not an absolute rule but is applied only when the testator's general intention cannot be deduced from the will read as a whole, Dickison v. Dickison, 138 Ill. 541, 546–7; see also Hunt v. Hawes, 181 Ill. 343; Sheridan v. Blume, 290 Ill. 508; Weilmuenster v. Swanner, supra; and ordinarily a specific provision will override or modify

a general provision, Dickison v. Dickison, supra, at 547; see also McCreery v. Burmood, 332 Ill. 645, 648; Knisely v. Simpson, 397 Ill. 605. If possible, and if unreasonable or absurd constructions can be avoided, the apparent repugnancy should be resolved and the clauses reconciled in a manner which will render the whole will effective and allow each provision to stand. Therefore, as stated in Dickison v. Dickison, supra, at 546-7, it is "permissible to resort to every reasonable intendment,—to reverse the relative order of the devises or bequests, and to transpose the different provisions of the will, if it be possible thereby to render them consistent and give effect to each. . . . And so, repugnant words, in whatever portion of the will they occur, which contravene the evident general purpose and intention of the testator as clearly expressed, may be rejected or transposed, or *limited and controlled* by other and prior provisions, and by the general purpose and intent thus clearly manifested. Holliday v. Dixon, 27 Ill. 33. . . ." [Emphasis supplied.]

 It may be that an appointive power is exercised ineffectively, as in a case where one of the appointees has predeceased the exercise and his share lapses (Bradford v. Andrew, 308 Ill. 458), or where the exercise violates the rule against restraints on alienation. (Northern Trust Co. v. Porter, 368 Ill. 256.) Whether the lapsed share passes as intestate property to the heirs at law (Bradford v. Andrew, supra), or the property passes as in default of appointment to those designated to take under the instrument that created the power (Northern Trust Co. v. Porter, supra), depends on whether the whole will evinces an intention on the part of the testator "to take the property dealt with out of the instrument creating the power for all purposes, or only for a limited purpose of giving effect to the particular intention expressed." See the Bradford (465) and Porter (264) cases, supra. See also Talbot v. Riggs, 287 Mass. 144,

69

191 N. E. 360; Old Colony Trust Co. v. Allen, 307 Mass. 40, 29 N.E.2d 310; cf. the American Law Institute's Restate. Prop., sec. 365 (3).

The English cases generally have held that property appointed upon a trust which for whatever particular reasons fails, causes the property to pass to the estate of the donee ineffectively exercising the power by way of a resulting trust. See, e. g., Case Cornment, 2 U. of Chi. L. Rev. (1934) 156; see also the annotation in 93 A. L. R. 967 et seq.; and cf. Restate. Prop., sec. 365 (2). In Bundy v. United States Trust Co. of New York, 257 Mass. 72, 153 N. E. 337, 340, the court said, citing the case of Dunbar v. Hammond, 234 Mass. 554 (125 N. E. 686), that this result followed where no provision for default of appointment had been made in the instrument which created the power. In the Dunbar case, supra, exercise of the power failed for uncertainty because no beneficiaries were named, and the court held that the property subject to the power passed intestate to the next of kin of the donee of the power, subject to payment of legacies, debts and costs of administration. However, in Fiduciary Trust Co. v. Mishou, 321 Mass. 615, 75 N.E.2d 3, the court said that the statement of the court in the Bundy case, supra, was dictum and was unsupported by any citation of authorities; that in the will which created the power involved in the Dunbar case, supra, there was a provision for default of appointment; and that the only rule governing the general problem of devolution of appointive property in cases of ineffectively exercised powers was (citing the Bradford [Ill.] and Talbot [Mass.] cases, supra) the intention of the testator. See also Northern Trust Co. v. Porter, supra, at 264–5, decided before the Massachusetts case of Fiduciary Trust Co. v. Mishou, supra, reviewing the earlier Massachusetts Dunbar, Bundy and Talbot cases, supra, and the Illinois case of Bradford v. Andrew, supra. The court in Northern Trust Co. v. Porter,

supra, stated that the problem was one of the intention of the testator, held that the property passed under the instrument which created the power as in default of appointment instead of as intestate property, because (citing the statement in the Bradford case, supra) the donee's will manifested no intention to take the property out of the instrument which created the power for all purposes.

In the instant case, Article Thirteenth manifests testator's intention to take the property out of the instrument which created the power for all purposes. Its initial sentence assumes a power of sale in the executors over the property and such power can operate only upon the premise that the testator's interest under the inter vivos trust indenture was already a part of his estate for all of the legitimate and ordinary functions and purposes to be executed by the executors. This is confirmed by the last sentence of that article. In so far, therefore, as it passed to testator's executors, it passed as part of his estate, subject to payment of taxes, costs of administration, debts and legacies. While the executors were not expressly directed with respect to the disposition of the proceeds of sale of testator's property interest under the inter vivos trust indenture, such implied direction cannot be ignored in view of the clearly recognized functions of the executors and the language used by the testator, viz., "my interest as beneficiary under the Logan Real Estate Trust. . . ." For all practical purposes of the administration of his estate he "blended" that interest with all of his other property. See Bradford v. Andrew, supra; Restate. Prop., sec. 354, Comment (d). Or, if considered as a direct gift or appointment to his executors, they took the interest in their representative capacity, in the absence of an expression of any other intention, and the interest passed as part of the estate. See, e. g., MacKenzie v. MacKenzie, [1851], 3 Mac. & G. 559; Bickenden v. Williams, [1869]

71

L. R. 7 Eq. 310; In re De Lusi, [1879] Ir. L. R. 3 Eq. 232; and see generally 93 A. L. R. 967 et seq.

■ We consider it as established, therefore, that the power was exercised, that the interest subject to the power was taken out of the instrument which created the power for all purposes and, therefore, that the interest cannot pass as in default of appointment. We have only now to consider whether it passed in trust as part of the residue, or passed intestate to the heirs at law of the testator, subject, however, to payment of taxes, costs of administration, debts and legacies.

There is no logical conflict between Articles Fourth and Thirteenth up to this point. Article Fourth states, first and only apparently that the "interest" in question shall not pass as part of the residuary trusts. It is not thereby logically excluded from passing as part of the testator's estate. It is only when we go beyond the term "executors" in Article Thirteenth and attempt to give effect to the term "trustees" also found there, that we are confronted with an apparent conflict. Is it irreconcilable?

It is evident first that the testator had in mind other powers of appointment of which he was or might be the donee. It is not necessary to probe for the motive or possible motives that prompted his intention to exclude the "property" subject to those other powers from the residuary trust because motive is not controlling. We look first and solely to his intention. This is determined by reading the whole will and not one isolated section. The fact that he intended to exclude such other appointive property becomes important. If he had excluded specifically and not generally his "interest" in the Logan Real Estate inter vivos trust the solution of the problem would be more difficult. We should probably have to make a choice between the two and, therefore, sacrifice one. But in the instant will there is a general exclusion clause followed by a specific clause of inclusion. It is apparent that the

72

testator intended that his specific appointive interest should pass by way of the residuary trust, and by parity of reasoning we do not believe that the exclusion clause in Article Fourth is in fact as general as when we initially considered it in isolation. His intention is specific in Article Thirteenth, his appointive interest is identified beyond doubt. It is included in and as a part of the trust provisions which are Articles Eight to Fourteenth, inclusive.

In the case of Dickison v. Dickison, 138 Ill. 541, the testator made a specific devise of certain real estate to two of his children "in full of their portions of my estate, both real and personal. . . ." In the residuary clause of his will, following other specific bequests and devises, he gave all the rest and remainder of his estate, real and personal to his wife, one-third, then "the remainder to my children in equal portions, share and share alike. . . ." He had other children. The court held that the specific devise "in full" to the former two children limited and controlled the general grant of the residue of his estate to "my children," so that the former could not share in the general residuary grant with the other children. The analogy between that case and the present is apparent. While there was evidence in that case of the fact of other existing children, evidence of the existence in the instant case of other appointive powers in our opinion is not required. Reference by the testator to plural powers of appointment is evidence of the fact that he thought he had or might before his death acquire others. That is sufficient.

██ There is a presumption against intestacy so strong that the court will adopt any reasonable construction of the will rather than hold that the testator intended to die intestate as to any portion of his property. In re Estate of Trager, 413 Ill. 364, 365. There is no necessity to sacrifice the specific provision, about which there is little doubt, to the general, concerning

73

which we have grave doubt. There is logically no irreconcilability between the two concerning the testator's general intention. We conclude that it was not his intention to exclude his appointive interest from the residuary trusts (Dickison v. Dickison, supra), and that his appointive interest in the inter vivos trust passed as a part of his residuary trust estate.

██ As to the second issue raised by the appeal, the question of attorney fees, we have found that the will required construction. It is well established that under such circumstances it is proper to allow attorney fees. The amount of the fees are within the discretion of the trial court, but they must be reasonable, commensurate with the services rendered and the amount involved. Golstein v. Handley, 390 Ill. 118. The value of decedent's share of the Logan Real Estate Trust, the fund in issue, was conceded by all the parties to be approximately $65,000. The total attorney fees allowed by the trial court was $15,990. Sixty per cent of the fees so allowed were charged against the corpus of the estate of Stuart Logan, deceased, and forty per cent were charged to the Logan Real Estate Trust. The total amount of the fees as originally requested was between $18,000 and $19,000. The trial court stated that this was excessive. It was suggested to the court that a portion of the fees should be chargeable to decedent's estate which was approximately $600,000. After a discussion the apportionment set forth was decided upon.

██ It is the general rule that when an ambiguity in a will relates only to a portion of testator's property, attorney fees, if allowed, are chargeable only against the property or fund in dispute. Golstein v. Handley, supra, and cases therein cited. It was therefore, error to charge sixty per cent of the attorney fees allowed to the estate. If the sum allowed of

74

$15,990 were to be charged to decedent's share of the Logan Real Estate Trust this would be twenty-three per cent of its value. This is clearly excessive.

The order allowing attorneys' fees is therefore reversed and the question is remanded to the trial court with directions to allow reasonable attorneys' fees to the respective parties commensurate with the value of the fund involved in this litigation.

Order affirmed in part and reversed in part, and cause remanded with directions.

McCORMICK, P. J. and SCHWARTZ, J., concur.