*Decision will be entered under Rule 50.*

ESTATE OF WILHELMINA L. BENJAMIN, DECEASED, BY THE FIRST NATIONAL BANK OF CHICAGO, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3584–63. Filed July 20, 1965.

*Mark Crane,* for the petitioner.
*Kenneth B. Samuels,* for the respondent.

OPINION

DRENNEN, *Judge:* Respondent determined a deficiency in estate tax in the amount of $54,591.32.

The sole issue for decision is whether the residuary trust established under the will of Wilhelmina L. Benjamin qualifies for the marital deduction.

The facts have all been stipulated and the stipulation of facts is incorporated herein by reference.

Wilhelmina L. Benjamin (hereafter referred to as decedent) died testate on June 2, 1960, a resident of Oak Park, Cook County, Ill., at the age of 88 years. Decedent's Federal estate tax return was filed with the district director of internal revenue, Chicago, Ill., on August 14, 1961.

Decedent's last will with codicil was admitted to probate in the Probate Court of Cook County, Ill., on July 12, 1960. The First National Bank of Chicago was appointed executor of decedent's estate by said court on July 12, 1960. The First National Bank also became testamentary trustee pursuant to article Third of decedent's will and article First of the codicil thereto and is presently acting in that capacity.

Decedent and her husband, Bert R. Benjamin (hereafter referred to as Bert), were married on November 25, 1903, and had no children. Decedent was survived by Bert, and by certain nieces and nephews who were descendants of deceased brothers and sisters of the decedent, her only heirs-at-law and next of kin. Bert was 89 years of age on the date of decedent's death.

Decedent and Bert both executed wills in 1937, Bert's having been executed on September 30, 1937, and decedent's on November 16, 1937. Both wills were drafted by the same attorney. Decedent and Bert each executed a codicil to their respective wills in the latter part of November 1958. Both codicils were drafted by the same attorney. Decedent and Bert knew the contents of each other's will and codicil. The will and codicil of decedent mentioned above were the will and codicil admitted to probate.

Decedent's will, after first directing the executor to pay all debts, funeral expenses, and taxes, provided in pertinent part as follows:

Second: I give and bequeath to my beloved husband, Bert R. Benjamin, all articles and effects of personal, domestic, or household use, or ornaments, including automobiles, of which I may die possessed.

Third: All the rest, residue, remainder of my property, real, personal, or mixed, of whatsoever character and wherever situate, of which I may die seized or possessed, or which I may own or have any interest in at the time of my death, I give, devise, and bequeath to James G. Christie, of 180 North Michigan Avenue, Chicago, Illinois, as Trustee, to hold upon the following trusts, to-wit:

(a) To pay over to my husband during his lifetime the entire net income derived from my estate and such amount of the principal thereof as he may from time to time direct.

(b) On the decease of my husband, to pay all the rest, residue and remainder of my estate to my nephews and nieces, the children of my brothers William C. Bergman, Henry G. Bergman, Adolph Bergman, Chris Bergman, Fred H. Bergman and August H. Bergman, all of Newton, Iowa and of my sisters, Dena B. Maytag of Newton, Iowa and Lottie Schnathorst of Moline, Illinois, share and share alike.

(1) If any of my said nephews and nieces should predecease me or should predecease my husband and leave issue him or her surviving, then the share of such deceased nephew or niece shall go to such issue, share and share alike. In the event such deceased nephew or niece does not leave issue him or her surviving, then his or her share shall go to my said nephews and nieces as may be then living, share and share alike.

(c) The income payments provided for hereunder shall commence from the date of my death and shall be made monthly, or oftener, as my Trustee shall deem best, but shall only be made when and as such income after it shall have accrued shall be on hand for payment (except as hereinabove specifically otherwise provided), and not by way of anticipation, and no disposition, charge or incumbrance of such income or principal of the trust estate, or any part thereof, by any beneficiary, or distributee hereunder, by way of anticipation, shall be of any validity or legal effect, or be in any wise regarded by my Trustee, nor shall such income, or any part thereof, be in any wise liable to any claim of any creditor of any such beneficiary or distributee.

(d) * * * [Powers of trustee.]

Fourth: In the event that my husband shall predecease me, the trust hereinabove set forth shall be of no effect and, in that event, I direct that my executor hereinafter named distribute my estate in accordance with the provisions of clause (b) and (b)(1) of paragraph Third of this my Last Will and Testament.

Fifth: * * * [Appointment of executor.]

Except for the differences that may be noted in the following provisions, Bert's will was similar to decedent's will. It provided:

Second: I give and bequeath to my beloved wife, Wilhelmina L. Benjamin, all articles and effects of personal, domestic, or household use, or ornaments, including automobiles, of which I may die possessed.

Third: All the rest, residue, and remainder of my property, real, personal, or mixed, of whatsoever character and wherever situate, of which I may die seized or possessed, of which I may own or have any interest in at the time of my death, I give, devise, and bequeath to James G. Christie, of 606 South Michigan Avenue, Chicago, Illinois, as Trustee, to hold upon the following trusts, to-wit:

(a) To pay over to my wife during her lifetime the entire net income derived from my estate, and, in addition, such amount of the principal thereof, if any, as my said Trustee shall deem necessary for the good, sufficient, and complete support and comfort of my wife should she find that the net income be not sufficient therefor.

(b) On the decease of my wife, to pay

(1) Ten per cent (10%) of the principal of my said estate, including any accruals of income not yet paid over, to the Alumni Association of the Iowa State College of Agriculture and Mechanical Arts, Ames, Iowa, to be used by such Association for any purpose or purposes as it may deem fit.

(2) Seven and one-half per cent (7½%) of the principal of my said estate, including any accruals of income not yet paid over, to each of my sisters, namely, Mrs. Mae Kilduff, of Newton, Iowa, Mrs. Anna Belle Hume, of Gulfport, Mississippi, Mrs. Leona Wormly, of Newton, Iowa, and Mrs. Elsie Kaufman, of Evanston, Illinois. If any of my said sisters should predecease me or should predecease my wife, then the share of such sisters shall go to such of her children as may be living at the time distribution of my said estate shall be made.

(3) All the rest, residue, and remainder of my estate, including any lapsed legacies, to such of the children of my said sisters as may be then living, share and share alike, and to the survivor and survivors of them.

(c) The income payments provided for hereunder shall commence from the date of my death and shall be made monthly, or oftener, as my Trustee shall deem best, but shall only be made when and as such income after it shall have accrued shall be on hand for payment (except as hereinabove specifically otherwise provided), and not by way of anticipation, and no disposition, charge or incumbrance of such income or principal of the trust estate, or any part thereof, by any beneficiary, or distributee hereunder, by way of anticipation. shall be of any validity or legal effect, or be in any wise regarded by my Trustee, nor shall such income, or any part thereof, be in any wise liable to any claim of any creditor of any such beneficiary or distributee.

The codicils to both wills executed in November 1958 simply changed the trustees and executors named in the wills to make the First National Bank of Chicago trustee and executor under each will.

Decedent's husband did not renounce decedent's will but took under and pursuant to decedent's will.

Bert received the goods and chattels of the decedent, having an appraised value of $1,256, pursuant to article Second of the will, together with jointly owned Series E savings bonds having a value at the date of decedent's death of $7,834.40, and in the administration of the estate there was set off by order of the Probate Court of Cook County, a $10,000 spouse's award, which was paid to Bert by the executor. All of the foregoing items totaled $19,090.40, and the total amount thereof has been determined by respondent to be allowable as a marital deduction under the provisions of section 2056, I.R.C. 1954.

There has been only one distribution of the principal from the trust established by decedent's will. This distribution, consisting of 2,000 shares of Maytag Co. common stock, was made by the First National Bank of Chicago, as executor of decedent's will, to itself as trustee under her will, and by the trustee to decedent's surviving spouse pursuant to a request and direction from him dated December 11, 1962. The stock was transferred from the First National Bank of Chicago, as executor of decedent's estate, to the First National Bank of Chicago, as trustee under decedent's will on December 28, 1962. New certificates, in the name of decedent's husband, were issued for 2,000 shares of the Maytag Co. common stock on January 8, 1963. On January 16, 1963, these certificates were sent by the trustee to the Avenue State Bank of Oak Park for delivery to decedent's husband. On January 31, 1963, he accepted delivery of them. In exchange for this

distribution, the decedent's husband gave the trustee a receipt and discharge in which he agreed to return the stock or the proceeds thereof to the trustee on its demand if recourse thereto becomes necessary for the payment of taxes, expenses, or lawful claims against it. In making this distribution the bank as executor and trustee obtained the approval of no beneficiaries under decedent's will other than decedent's husband.

Since the death of decedent, the following income distributions have been made by the First National Bank of Chicago, as executor of decedent's will, to itself as trustee under her will, and by the trustee to decedent's husband.

| Amount | Transferred from executor to trustee on— | Distributed by trustee to Bert on— | Amount | Transferred from executor to trustee on— | Distributed by trustee to Bert on— |
|---|---|---|---|---|---|
| $25,000 | June 12, 1962 | June 13, 1962 | $2,000 | Dec. 23, 1963 | Dec. 23, 1963 |
| $15,500 | Dec. 27, 1962 | Dec. 27, 1962 | $2,800 | Mar. 20, 1964 | Mar. 20, 1964 |
| $2,800 | Apr. 2, 1963 | Apr. 2, 1963 | $2,800 | June 19, 1964 | June 19, 1964 |
| $2,800 | June 20, 1963 | June 20, 1963 | $2,800 | Sept. 21, 1964 | Sept. 21, 1964 |
| $2,800 | Sept. 20, 1963 | Sept. 20, 1963 | $400 | Sept. 23, 1964 | Sept. 23, 1964 |
| $2,800 | Dec. 20, 1963 | Dec. 20, 1963 | | | |

In 1937 decedent owned 200 shares of common stock of the Maytag Co. from which she received total dividends in 1937 in the amount of $100. Throughout 1937 Bert owned 600 shares of common stock of International Harvester Co. from which he received dividends in the total amount of $2,400, and 600 shares of the 7-percent preferred stock of International Harvester Co. from which he received dividends in the total amount of $4,200.

In November 1958, Bert owned 3,500 shares of common stock of International Harvester Co. and he owned 600 shares of the preferred stock of the corporation.

During 1958 Bert received dividend income totaling $11,150 and decedent received dividend income totaling $13,488, the largest amount from the Maytag Co. In their joint income tax return for 1958 decedent also reported annuity income of $432.48 and Bert reported pension and annuity income of $8,467.33.

The estate tax return filed for decedent's estate claimed a marital deduction computed by including in bequests to surviving spouse the amount of $362,780.31, consisting of the goods and chattels, jointly held bonds, and spouse's award previously mentioned, totaling $19,090.40, plus $399,078.46 designated as "Life estate in entire net income from estate 'and such amount of the principal thereof as he may from time to time direct,' " less taxes attributable thereto.

In his notice of deficiency respondent determined that the amount allowable as a marital deduction was the $19,090.40 above mentioned. Disallowance of the balance of the marital deduction claimed gives rise to the deficiency here involved.

The issue is whether the residuary trust established under the will of decedent qualifies for the marital deduction under section 2056 of the Internal Revenue Code of 1954. Section 2056(a) provides that in determining the value of the taxable estate for Federal estate tax purposes there shall be deducted from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse. Section 2056 (b) provides, however, that if the interest passing to the surviving spouse is a terminable interest, under the rules therein set forth, no deduction shall be allowed for such interest. Paragraph (5) of section 2056(b)[1] provides an exception to the terminable interest rule in the case of a life estate coupled with a power of appointment. It is with this exception that we are here concerned. It is agreed that Bert took only a life estate, normally a terminable interest, in the trust. Petitioner claims that the life estate was coupled with a power of appointment which meets all the requirements of paragraph (5) and thus qualifies the interest passing to Bert for the marital deduction; respondent determined that the power to invade corpus granted to Bert does not meet all the requirements of paragraph (5) and therefore disallowed the marital deduction.

Five conditions are prescribed in paragraph (5) to make the exception operative. First, the surviving spouse must be entitled for life to all the net income from the interest; second, the income must be paid to the surviving spouse annually or at more frequent intervals; third, the surviving spouse must have the power to appoint the interest to himself or his estate; fourth, the power to appoint must be exercisable by the surviving spouse alone and in all events; and, fifth, no person other than the surviving spouse may have the power to appoint the interest to any person other than the surviving spouse. Sec. 20.2056(b)–5, Estate Tax Regs.; *Estate of Raymond Parks Wheeler*, 26 T.C. 466 (1956).

The crucial language of decedent's will is contained in article Third providing for the residuary trust and directing the trustee "To pay

---

[1] SEC. 2056(b),(5). LIFE ESTATE WITH POWER OF APPOINTMENT IN SURVIVING SPOUSE.—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

(A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

(B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

over to my husband during his lifetime the entire net income derived from my estate and such amount of the principal thereof as he may from time to time direct."

It is clear, and there is no argument to the contrary, that under this language the first and second conditions set forth above are met; i.e., Bert is entitled to all the income for life, payable at least annually. And it is also clear from the remainder of the will that no one other than Bert has a power to appoint this interest. The controversy between the parties thus turns on whether Bert had the power to appoint the interest to himself or his estate, and, if so, whether that power was exercisable "in all events."

Both parties recognize that, in the case of a testamentary trust, an unlimited power in the surviving spouse to invade the principal may constitute a power to appoint the interest to himself or his estate within the meaning of section 2056. *Hoffman* v. *McGinnes*, 277 F. 2d 598 (C.A. 3, 1960). See *Estate of E. W. Noble*, 31 T.C. 888 (1959); *Estate of Elwood Comer*, 31 T.C. 1193 (1959); sec. 20.2056(b)–5(g) (1), Estate Tax Regs. Petitioner, relying primarily on the specific language of paragraph Third (a) of the will directing the trustee to pay over to Bert during his lifetime the entire net income "and such amount of the principal thereof as he may from time to time direct," argues that Bert clearly had an unlimited power to invade the principal. Respondent argues that this language, particularly when read in the context of the entire will, does not give Bert an unlimited right to invade the entire principal. Respondent relies primarily on the fact that decedent made provision for the remainder to go to her nephews and nieces, natural objects of her bounty, after Bert's death, on the language "from time to time" used in connection with Bert's right to withdraw principal, and on the spendthrift clause in paragraph Third (c) of the will, as negating an intent to permit Bert to withdraw the entire principal of the trust to do with as he pleased.

Federal law determines what interests in property are to be taxed, but we must determine the nature of the interests passing under a will under local law, in this instance under the law of Illinois, where decedent was domiciled at the time of her death. *Morgan* v. *Commissioner*, 309 U.S. 78 (1940); *Estate of Francis F. Field*, 40 T.C. 802 (1963); *Estate of Elwood Comer*, supra. This rule is significantly applicable in determining this issue—whether a power of withdrawal given a life beneficiary constitutes an unlimited power to appoint trust principal to himself. *Hoffman* v. *McGinnes*, supra.

The Supreme Court of Illinois has recently said in *Marshall* v. *Northern Trust Co. of Ohio*, 22 Ill. 2d 391, 176 N.E. 2d 807, 809 (1961):

The cardinal rule of testamentary construction is to ascertain the intention of the testator from an examination of the will as a whole and to give effect thereto unless such intent is contrary to law or public policy.

That court also recognizes that in the construction of wills there is little aid to be derived from judicial determinations in other cases unless the wills and circumstances are identical, *Hoge* v. *Hoge*, 17 Ill. 2d 209, 161 N.E. 2d 117 (1959), and that each will must be construed in the light of its particular phraseology and the facts and circumstances surrounding the testator at the time of its execution. *Boyle* v. *John M. Smyth Co.*, 248 Ill. App. 57 (1928). The Illinois courts have also held that unless a contrary intent is clearly expressed, a will should be so construed as to uphold all the provisions thereof and give effect to all the language used by the testator, and the courts will endeavor to reconcile inconsistent or repugnant provisions and adopt any reasonable construction to this end, *Edgar County Children's Home* v. *Beltranena*, 402 Ill. 385, 84 N.E. 2d 363 (1949) ; *Marshall* v. *Northern Trust Co. of Ohio*, *supra*, regardless of the respective positions of the provisions in the will. *Logan* v. *Harris Trust & Savings Bank*, 8 Ill. App. 2d 61, 130 N.E. 2d 211 (1955) ; *In re Fahnestock's Estate*, 384 Ill. 26, 50 N.E. 2d 733 (1943). Where one construction of a will renders one portion of the will meaningless, and another gives effect to all the words in the will, the latter construction should be adopted. *Wardner* v. *Seventh Day Baptist Memorial Board*, 232 Ill. 606, 83 N.E. 1077 (1908).

Applying the above rules of construction to the language used by decedent in her will, in the light of the circumstances existing at the time of its execution, convinces us that decedent intended Bert to have an unlimited power to invade the principal of the trust for any purpose he wanted. Decedent and Bert had no children and it would seem that Bert was the primary object of decedent's bounty. Certainly there were no restrictions specifically imposed on Bert's power to demand principal in the language granting that power; although in Bert's own will the right to invade principal for decedent's benefit was limited to amounts the trustee might deem necessary for her complete support and comfort. It would appear from the simple language used in paragraph Third (a) that decedent had complete confidence in Bert's judgment to either use the principal of her estate for whatever purpose he deemed best or, in the absence of any better use, leave it in trust for decedent's nephews and nieces. We find nothing in the language of the will, considered as a whole, nor in the circumstances surrounding its execution, that convinces us that decedent intended that the principal of the trust be maintained intact. In short, it seems from the language of article Third that Bert could demand that the trustee distribute to him any or all of the principal at any time, free of the trust, and without any duty to account to the remaindermen. The amounts withdrawn would, if possessed by him at his death, constitute a part of his estate free of any claims of the

remaindermen; and this power to control the ultimate disposition of the trust principal will remain with Bert up until the moment of his death.

We have been cited no Illinois cases, nor have we found any, which would require or suggest a different construction of this will. Respondent cites several old Illinois cases for the proposition that where a power of disposal accompanies a devise of a life estate, the power of disposal is only coextensive with the life estate. The wills under review in those cases contained specific language to the effect that upon the death of the life tenant whatever was left unconsumed was to go to the remaindermen and the circumstances were such to support such a construction. In *Henderson* v. *Blackburn*, 104 Ill. 227 (1882), decedent's wife was given a life estate and the power to dispose of so much of the same as she may need or wish to use, during her lifetime. In *Walker* v. *Pritchard*, 121 Ill. 221, 12 N.E. 336 (1887), the wife was given certain real and personal property, during her lifetime, with full power to sell and convey and convert the proceeds to her own use and benefit, but at the death of the wife all of the property, or so much thereof as may remain unexpended, was to go to testator's sons. In *Wardner* v. *Seventh Day Baptist Memorial Board*, *supra*, the wife was given all that remained of testator's property after payment of legacies to his son and grandchildren, to use and dispose of during her life, with the remainder to be divided among three named charities. In each of these cases the courts limited the wife's rights because the specific language used in the wills and the circumstances involved convinced the court that testator so intended—not because of any rule of law. Furthermore, in each of those cases the courts were dealing with legal life tenancies and were called upon to determine whether the wife received what was tantamount to a fee simple estate. This problem is different than the problem we have here where title is vested in a trustee until the property is withdrawn from the trust. As said in *Connecticut Bank & Trust Co.* v. *Lyman*, 148 Conn. 273, 170 A.2d 130 (1961):

It is hardly necessary to point out that we are not concerned with a legal life estate with remainder over. Where such an estate is created, or where the life tenant is himself constituted a trustee, he occupies a quasi-fiduciary or fiduciary relationship with respect to the remaindermen, and it is frequently held that even an apparently unlimited power of withdrawal or invasion is subject to an implied limitation that it be exercised in good faith and not for the dominant purpose of preventing the remainder from going to the remaindermen. Cases of this type are collected in an annotation in 2 A.L.R. 1243, supplemented in 27 A.L.R. 1381, 69 A.L.R. 825, and 114 A.L.R. 946. Such cases, although stressed by the guardian ad litem, actually are not in point. We are not concerned with a life estate, in law, but with a trust, in equity. The defendant is neither an actual nor quasi trustee for anyone.

The above Illinois cases also recognized that where other words in

the will clearly indicated that a larger power was intended, the power of disposal in the life tenant was not limited to such disposal as a life tenant could make. In our opinion the will here involved clearly intended Bert to have powers with respect to the principal of the trust in excess of those of a life tenant. See *In re Curtis' Estate*, 28 Ill. 2d 172, 190 N.E. 2d 723 (1963), the most recent Illinois case to which we have been cited, which, while not involving the marital deduction for estate tax purposes, did require the court's construction of the following provision contained in the decedent's will:

[My wife shall have] the right at any time and from time to time to withdraw any part or all of the principal of the Marital Trust. The trustees shall make payment without question upon the written request of my said wife delivered to the Trustees.

The marital trust provided further that if the wife did not withdraw the entire principal before her death, then upon her death the principal remaining should be added to the residuary trust for the benefit of decedent's descendants. In construing this provision the court said:

By granting to his widow the privilege of withdrawal, the trustor virtually tendered to her the principal of the marital trust which she could, as could any legatee or devisee, * * * [citation omitted] accept or reject at her pleasure. * * *

See also *Gilman v. Bell*, 99 Ill. 144 (1881).

The different phraseology used in the several wills and the difference in surrounding circumstances involved in the cases cited by respondent make those cases distinguishable and inapposite here. In fact we have been referred to no Illinois cases wherein the language used in the wills and the circumstances were sufficiently similar to those involved here to be of any value as a precedent in construing this will.

Similarly, because of the differences in language used in the wills involved, and/or the differences in the circumstances, we do not believe any of the cases decided by the Federal courts and cited and relied on by the parties are controlling with respect to the issue here involved. In *Estate of E. W. Noble, supra*, the spouse's power or rights with respect to withdrawals of principal were limited by a standard for his maintenance; and in *Estate of Ralph G. May*, 32 T.C. 386 (1959), affd. 283 F. 2d 853 (C.A. 2, 1960), certiorari denied 366 U.S. 903 (1961), for his necessities and comfort. In *Matteson v. United States*, 147 F. Supp. 535 (N.D.N.Y. 1956), a condition for the exercise of the power was the determination that net income be insufficient for the spouse's needs. There is no indication from article Third of the will here involved that Bert was granted merely the power to consume or use trust principal, with specific directions that any unconsumed or unused portion should go to the remaindermen, as in *Estate of Francis F. Field, supra*, and *Estate of Ralph G. May, supra*, with the result that Bert must exercise the power in good faith with regard to

the interest of the remaindermen. Cf. *Commissioner* v. *Ellis' Estate*, 252 F. 2d 109 (C.A. 3, 1958), reversing 26 T.C. 694 (1956) ; *William A. Landers, Sr.*, 38 T.C. 828 (1962).

Respondent argues that despite the unrestricted language used in article Third (a) granting Bert the power to invade principal, other language in the will limits his rights in this respect. Respondent argues first that by using the words "as he may from time to time direct" in connection with Bert's right to withdraw principal, decedent in some way placed a limitation on Bert's power to invade the entire principal. We do not agree. In the first place the words "time to time" relate only to when the principal may be withdrawn and, rather than being a limitation on the time, in reality make the time, within the span of Bert's life, unlimited. We think a proper construction of this phraseology would permit Bert to either withdraw the entire principal at one time or withdraw it at intervals. It does not in any way limit his right to withdraw. Secondly, we find no requirement in the law or in the regulations that the entire principal be withdrawn all at one time, as long as the spouse has the right to withdraw all of it "in all events." In fact respondent's regulations militate against his argument. See section 20.2056(b)–5(g)(4), Estate Tax Regs., wherein it is said, in part:

If the power is in existence at all times following the decedent's death, limitations of a formal nature will not disqualify an interest. Examples of formal limitations on a power exercisable during life are requirements that * * * reasonable intervals must elapse between successive partial exercises. * * *

See also *Hoffman* v. *McGinnes*, *supra*, wherein a power granted to the surviving spouse used the same language but was held to qualify for the marital deduction.[2]

Respondent next argues that when article Third (a) is read in the context of the entire will, it creates only a life estate in Bert with remainder over to decedent's nieces and nephews, and to construe article Third (a) to permit Bert to withdraw the entire principal and thus short circuit the gift over to the natural objects of decedent's bounty, would be to nullify one of the provisions of decedent's will. Respondent relies on *Estate of Francis F. Field*, *supra*, and on the several Illinois cases above cited, *Henderson* v. *Blackburn*, *Walker* v. *Pritchard*, and *Wardner* v. *Seventh Day Baptist Memorial Board*, in support of this argument. As previously mentioned, we do not believe the Illinois cases are controlling. In *Estate of Francis F. Field*, *supra*, the will gave the surviving spouse the right to "consume" the entire estate but in the event she did not do so it made rather elaborate provisions for disposition of the unconsumed portion, and

---

[2] In a marital deduction clause suggested by one authority for lawyers drafting wills with provisions for power in the surviving spouse to make withdrawals of principal from marital trusts, the phrase "from time to time" was employed. See Casner, "Estate Planning—Marital Deduction Provisions of Trusts," 64 Harv. L. Rev. 582, 605 (1951).

we held this gave the spouse no power to appoint the unconsumed portion free of the trust. The will here involved gave Bert the right to withdraw "such amount of the principal" as he may direct, and there is nothing in the will as a whole or in the circumstances surrounding its execution to indicate that decedent intended to limit the rights of her husband to protect the rights of her nephews and nieces. In fact the obviously deliberate variation in this provision in decedent's will and the concomitant provision in Bert's own otherwise similar will points up the distinction between that case and this. Bert's will was drafted by the same attorney only a short time before decedent's will and his will specifically limited Wilhelmina's right to principal to such amount as the trustee should deem necessary for her support and comfort.

Respondent's final argument against a construction of this will that Bert was granted an unlimited power to invade principal is that such a construction would be inconsistent with the spendthrift clause contained in paragraph Third (c) of the will and would vitiate the effect of that provision.

We agree with respondent that at first blush there would appear to be some inconsistency between subparagraphs (a) and (c) of the Third paragraph of this will; but on closer consideration we do not believe the spendthrift provision is either nullified by or inconsistent with a construction of subparagraph (a) that gives Bert an unlimited power to invade principal. Of course the apparent inconsistency might be explained, as suggested by petitioner, as the mere transfer of a "boiler plate" spendthrift provision from Bert's will, where there would be no inconsistency, to decedent's will; but the provision is in decedent's will and must be given consideration.

As written, subparagraph (c), the spendthrift clause, undoubtedly applies to Bert and probably the remaindermen as well, rather than only to the remaindermen as suggested by petitioner. The first part of the provision relates to "income payments provided for hereunder," and the only income payments specifically provided for in the will are the payments of net income to Bert during his lifetime. The second clause of the subparagraph would appear to relate to both Bert and the remaindermen as it prohibits a disposition or encumbrance of income or principal of the trust by *any* beneficiary or distributee by way of anticipation, and provides that no such disposition or encumbrance shall have any legal effect, or be in any wise regarded by the trustee. The third clause of the subparagraph again relates only to income and provides that no part of the income shall be liable to any claim of any creditor of such beneficiary or distributee.

But recognizing that the spendthrift clause applies to Bert's rights with respect to both income and principal of the trust, is it repugnant to, and irreconcilable with, an unlimited right in Bert to invade

principal? Respondent claims that it is and that to construe the will otherwise would nullify the spendthrift clause. We disagree. In fact we think the only construction that would give effect to both provisions of the will is to construe the will as giving Bert an unlimited right to invade principal. If the spendthrift clause is literally construed as contended by respondent, it would prevent Bert from withdrawing any of the principal, which would nullify entirely the clear and unequivocal language of subparagraph (a). As we have seen, under Illinois law such a construction will not be made if a reasonable construction can be made which will give effect to all provisions of the will. *Marshall* v. *Northern Trust Co. of Ohio, supra.*

On the other hand it does not nullify the spendthrift provision to construe the will as giving Bert an unlimited right to invade principal. As we construe the will the spendthrift provision applies to limit Bert's right to assign or encumber any principal that has not been withdrawn from the trust and any income therefrom. This construction of the spendthrift provision would also have meaning with respect to the remaindermen to prevent them from anticipating their interests in the trust corpus, if any, upon Bert's death. Furthermore, we believe this construction of the will correctly reflects decedent's overall intention for disposition of her estate by giving Bert a life income from the trust, with the right to invade principal if and when he wants, but as long as the trust continues, or in the event of Bert's infirmity, Bert's interest therein as well as that of the remaindermen is protected against anticipation and against creditors.

Respondent's final argument is that even if decedent's will gave Bert a general power of appointment, the power must still fail to qualify for the marital deduction because it was not exercisable "in all events" since it could not be exercised until administration of the estate is terminated and the assets are distributed to the trust, and Bert can only invade principal by direction to the trustee. Any anticipation of his right to receive principal is prevented by subparagraph Third (c); therefore Bert's power is not exercisable "in any event" within the meaning of section 2056(b)(5) of the Code, so respondent argues. Respondent relies on section 20.2056(b)-5(g) (1) and (4), and on *United States* v. *Mappes*, 318 F. 2d 508 (C.A. 10, 1963), and *Estate of Frank Sbicca*, 35 T.C. 96 (1960), in support of this argument.

Paragraph (g) (1) and (4) of the above section of the regulations provides that for a power in a surviving spouse to appoint to herself to meet the condition that it be exercisable in all events, it must exist immediately following decedent's death. Subparagraph (4) cites as an example that if the power given to the surviving spouse is exercisable during life, but cannot be effectively exercised before distribution of the assets by the executor, the power is not exercisable in all events.

However, the subparagraph also states that an interest will not be disqualified by the mere fact that, in the event the power is exercised during administration of the estate, distribution of the property to the appointee will be delayed for the period of administration.

Paragraph Third (a) of decedent's will in no way deferred Bert's right to invade principal, except that it was to be exercised by directions to the trustee. However, it seems clear from the first clause of paragraph Third (c) that decedent intended the trust to become effective as of the date of her death, because it provided that the income payments provided for hereunder (from the trust) "shall commence from the date of my death." Under the codicil to the will the executor and trustee were the same, the First National Bank of Chicago. We find nothing in the body of this will indicating an intention to defer Bert's power to invade corpus until administration of the estate is closed. To construe this will and apply the regulations in the manner suggested by respondent would virtually mean that no power of appointment granted to a surviving spouse in a testamentary trust would qualify for the marital deduction because, technically speaking, very few testamentary trusts come into existence until termination of administration of the estate. We believe such a construction would do violence to the purpose and intent of the law.

The two cases cited by respondent are inapposite because the wills involved in both cases provided that the interest of the surviving spouses would terminate if they should die before completion of administration of the estates.

Construing this will under Illinois law, and giving full effect to all the language used therein and any circumstances attending its execution which might have a bearing thereon, in an attempt to arrive at and give effect to decedent's intent with respect to the disposition of her estate, we conclude that Bert was granted an unlimited power to invade principal, that this gave him a power to appoint the entire principal of the trust to himself, and that such power was exercisable by Bert alone and in all events, within the meaning of section 2056(b)(5) of the Code. It follows that the value of Bert's interest in the trust qualifies for the marital deduction. Consequently,

*Decision will be entered under Rule 50.*