ESTATE OF RULA BRINTON FLAKE, DECEASED, SAMUEL D. FLAKE, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Flake v. Commissioner
Docket No. 9971-92
United States Tax Court
T.C. Memo 1994-573; 1994 Tax Ct. Memo LEXIS 583; 68 T.C.M. (CCH) 1232; November 22, 1994, Filed *583 Decision will be entered for petitioner. For petitioner: Gregory A. Robinson and Karen S. Kingzett. For respondent: Andrew J. Gottlieb. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Petitioner is the Estate of Rula Brinton Flake. Respondent determined a $ 1,150,822 deficiency in petitioner's Federal estate tax. The issue for decision is whether Rula Brinton Flake's (decedent's) interests in two trusts that passed to her husband upon her death qualify for the marital deduction under section 2056. We hold that they do. Section references are to the Internal Revenue Code in effect on the date of decedent's death. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Decedent died on December 20, 1987. At the time of her death, decedent resided in Mesa, Arizona. Decedent was survived by her husband, Samuel D. Flake, and their five children. Pursuant to decedent's last will and testament, Samuel D. Flake was appointed executor and personal representative of the estate. Decedent's estate timely filed a Federal estate tax return on *584 March 17, 1989. Decedent and Samuel D. Flake established the Samuel D. and Rula B. Flake Trust pursuant to a Declaration and Agreement of Trust, effective December 26, 1983 (the 1983 trust). Decedent and Samuel D. Flake were the trustors, initial trustees, and first beneficiaries of the 1983 trust. Their five children were the second beneficiaries. The stated purpose of the 1983 trust is "to provide for the management and investment of the Trust Estate and provide for its distribution upon the death of the First Beneficiaries." The 1983 trust instrument was drafted by LeRoy Anderson (Anderson). Anderson has been a certified public accountant in Arizona for almost 40 years; he also attended 2-1/2 years of law school. Anderson has known decedent and Samuel D. Flake since 1951, and has been involved in their business, tax, and estate planning matters since 1953. In drafting the 1983 trust instrument, Anderson used a basic form that he acquired from an attorney, and modified it to meet the needs and wishes of the trustors. The relevant language of the 1983 trust instrument provides: ARTICLE II
DISTRIBUTIONS TO FIRST BENEFICIARIES: 1. The Trustees shall pay to the *585 First Beneficiaries [Samuel D. Flake and Rula B. Flake, as joint tenants with rights of survivorship] the net income of the Trust Estate in convenient installments as long as they shall live. The Trustees shall also, upon the request of the First Beneficiaries, pay such amount or amounts of the principal of the Trust Estate to the First Beneficiaries as they shall, from time to time, request in writing from the Trustees, until their death or until the Trust Estate is exhausted, whichever first occurs. 2. During the life-time of the First Beneficiaries, the income or principal shall be distributable only to them, and not to [the] second beneficiaries.
ARTICLE III
PROVISION UPON DEATH OF FIRST BENEFICIARIES: Upon the death of one of the First Beneficiaries, the following shall govern: 1. The one-half interest in the Trust Estate of the deceased beneficiary shall pass to the surviving beneficiary in the best method possible under the estate tax law then in effect. * * * 5. Notwithstanding anything herein to the contrary, particularly in paragraph 1. of this Article III above, should the Surviving First Beneficiary not live longer than nine months after the Decedent *586 First Beneficiary, then paragraph 1. shall not govern and the Trust Estate shall be divided into an "A" - Survivor's Trust, and "B" - Decedent's Trust, and the Survivor First Beneficiary shall have a life interest only in the Decedent's Trust. The Trusts shall be administered separately, but all other provisions shall remain. The Trust Estate need not be divided.
* * * ARTICLE VI
INTERPRETATIONS: 1. No significance is to be attached to the use of singular or plural designations or the use of the masculine, feminine or neuter gender in this agreement.
* * * ARTICLE VIII
POWERS RESERVED BY TRUSTORS: 1. Trustors may revoke this trust agreement in whole or in part and amend this trust agreement from time to time by written instrument signed and delivered to Trustees during Trustors' lifetime, provided that the duties, liabilities and compensation of Trustees shall not be materially changed without their written consent. The Trust Estate, or the part thereof affected by such revocation, including accrued or collected but undistributed income, shall thereupon be distributed to the Trustors or shall be retained, maintained or handled in accordance with *587 their directions. No amendments or revocations shall become effective until written notice is delivered to Trustees with the exceptions that property may be added to the trust corpus without any delay or notice rquirements. During any period of incompetency and from and after the death of both Trustors, this trust agreement shall be unamendable and shall be irrevocable.
Decedent and Samuel D. Flake established a second trust, called the S & R Trust, pursuant to a Declaration and Agreement of Trust effective July 1, 1987 (the 1987 trust). Decedent and Samuel D. Flake were the trustors, initial trustees, and first beneficiaries of the 1987 trust. Their five children were the second beneficiaries. The stated purpose of the 1987 trust is "to provide for the management and investment of the Trust Estate for the benefit of the first beneficiaries and provide for its distribution upon the death of the First Beneficiaries." The 1987 trust instrument was also drafted by Anderson. As with the 1983 trust, Anderson used a basic form that he acquired from an attorney, and modified it to meet the needs and wishes of the trustors. The relevant language of the 1987 trust instrument provides: *588 ARTICLE IV
POWERS RESERVED BY TRUSTORS:
A. Trustors may revoke this trust agreement in whole or in part and amend this trust agreement from time to time by written instrument signed and delivered to Trustee during Trustors' lifetime, provided that the duties, liabilities and compensation of Trustees shall not be materially changed without their written consent. The Trust Estate, or the part thereof affected by such revocation, including accrued or collected but undistributed income, shall thereupon be distributed to the Trustors or in accordance with their directions. No amendments or revocations shall become effective until written notice is delivered to Trustees with the exception that property may be added to the trust corpus without any delay or notice requirement. During any period of incompetency and from and after the death of both Trustors, this trust agreement shall be unamendable and shall be irrevocable.
* * * ARTICLE V
DISPOSITIVE PROVISIONS:
A. DISTRIBUTIONS TO FIRST BENEFICIARIES:
1. The Trustees shall pay to the First Beneficiaries [Samuel D. Flake and Rula B. Flake] the net income of the Trust Estate in convenient installments *589 at least annually as long as they shall live. The Trustees shall also, upon the request of the First Beneficiaries, pay such amount or amounts of the principal of the Trust Estate to the First Beneficiaries as they shall, from time to time, request in writing from the Trustees, until their death or until the Trust Estate is exhausted, whichever first occurs.
* * * B. PROVISION UPON DEATH OF FIRST BENEFICIARIES:
1. Upon the death of one of the First Beneficiaries, the Trust Estate shall be divided into an "A" - Survivor's Trust and a "B" - Decedent's Trust, and the Decedent's community property interest in the trust shall be transferred to the Decedent's Trust. If the portion transferred to the Decedent's Trust is greater than the maximum amount allowed tax free under the Internal Revenue Code for Estate Tax purposes, the excess over the tax free amount shall be divided to a "C" Decedent's Trust as Qualified Terminable Interest property for which election can be made for the purposes of qualifying for the marital deduction allowed under said law. The Trusts may continue to be administered as one trust, but must be accounted for separately. * * * 4. It is the intent *590 of Trustors that this trust shall be administered for the primary benefit of the surviving spouse. Trustee shall liberally exercise such discretion as will benefit the surviving spouse and shall consider the interest of successive or remainder beneficiaries to be subsidiary to the interest of the surviving spouse.
* * * ARTICLE VIII
INTERPRETATIONS:
* * * B. No significance is to be attached to the use of singular or plural designations or the use of the masculine, feminine or neuter gender in this agreement. Each designation or gender shall be construed to include others where appropriate.
Petitioner's Federal estate tax return values decedent's gross estate at $ 2,505,110. Of this amount, decedent's beneficial interest in the 1983 trust is valued at $ 2,169,645, and decedent's beneficial interest in the 1987 trust is valued at $ 326,296. The estate claimed a marital deduction in the amount of $ 1,882,835, which respondent disallowed. On August 24, 1991, Samuel D. Flake signed documents revoking both the 1983 and 1987 trusts. OPINION We must herein decide whether decedent's interests in both the 1983 and 1987 trusts that passed to her husband upon her *591 death qualify for the marital deduction under section 2056. In determining the value of a taxable estate for Federal estate tax purposes, section 2056(a) allows as a deduction the value of any interest in property that passes or has passed from the decedent to the surviving spouse. Section 2056(b) provides, however, that if the interest passing to the surviving spouse is a terminable interest, then no deduction is allowed for such interest. But an exception to this terminable interest rule is provided under section 2056(b)(5)[1] where the surviving spouse has a life estate in the property coupled with a power of appointment. Petitioner contends that Samuel D. Flake has both a life estate and a power of appointment over both the 1983 and the 1987 trusts and thus the exception to the terminable interest rule provided under section 2056(b)(5) is satisfied; respondent disagrees. *592 In order for the exception to the terminable interest rule to be operative, five conditions must be satisfied. First, the surviving spouse must be entitled for life to all the net income from the interest; second, the income must be paid to the surviving spouse annually or at more frequent intervals; third, the surviving spouse must have the power to appoint the interest to himself or his estate; fourth, the power to appoint must be excercisable by the surviving spouse alone and in all events; and, fifth, no person other than the surviving spouse may have the power to appoint the interest to any person other than the surviving spouse. Estate of Wheeler v. Commissioner, 26 T.C. 466, 470-471 (1956); Estate of Carpenter v. Commissioner, T.C. Memo. 1994-108; sec. 20.2056(b)-5, Estate Tax Regs. With respect to the power of appointment needed to qualify for the section 2056(b)(5) exception, the estate tax regulations provide: The term "power or appointment" includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property *593 law connotations. For example, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment. Similarly, a power given to a decedent to affect the beneficial enjoyment of trust property or its income by altering, amending, or revoking the trust instrument or terminating the trust is a power of appointment. * * * [Sec. 20.2041-1(b)(1), Estate Tax Regs.; emphasis added.] The conditions * * * that the surviving spouse must have a power of appointment exercisable in favor of herself or her estate and exercisable alone and in all events, are not met unless the power of the surviving spouse to appoint the entire interest or a specific portion of it falls within one of the following categories: (i) A power so to appoint fully exercisable in her own favor at any time following the decedent's death (as, for example, an unlimited power to invade) * * * [Sec. 20.2056(b)-5(g)(1), Estate Tax Regs.; emphasis added.]
It is settled law that the surviving spouse's power to demand distribution of the trust corpus qualifies as a power of appointment entitled to the marital *594 deduction. Estate of Benjamin v. Commissioner, 44 T.C. 598, 604 (1965). Thus, with respect to the case at bar, it is clear from the language of the 1983 and 1987 trust instruments that the aforementioned first and second conditions for the exception to the terminable interest rule are met. Samuel D. Flake is entitled to all the income for life, and the income from each trust is payable at least annually. It is also clear from the language of the trust instruments that no one other than Samuel D. Flake has a power of appointment. Thus, resolution of the controversy between the parties turns on whether Samuel D. Flake alone has the power to withdraw trust principal after the death of decedent. If he possesses such a power after the death of decedent, then petitioner will prevail; if he does not, then respondent's determination should be sustained. The pertinent language involved is contained in Articles II and VI of the 1983 trust instrument and Articles V and VIII of the 1987 trust instrument. Article II of the 1983 trust instrument and Article V of the 1987 trust instrument provide for the principal and net income of each trust to pass to Samuel *595 D. Flake and Rula B. Flake "until their death or until the Trust Estate is exhausted, whichever first occurs". Article VI of the 1983 trust instrument and Article VIII of the 1987 trust instrument provide that "no significance is to be attached to the use of singular or plural designations". Resolution of the issue before us, thus, turns on whether "their death" means the death of both trustors or the death of either trustor. To resolve this ambiguity, we will examine the nature of the interests passing under the trusts. Federal law determines what interests in property are to be taxed; however, local law determines the nature of the interests passing under a trust or will. Here, the law of Arizona, where decedent was domiciled at the time of her death, controls. See Morgan v. Commissioner, 309 U.S. 78 (1940); Estate of Field v. Commissioner, 40 T.C. 802, 807-808 (1963); Estate of Comer v. Commissioner, 31 T.C. 1193, 1197-1198 (1959). Under Arizona law, when a trust is created pursuant to a written instrument, the grantor's intent is ascertained from the express language of *596 the instrument, and a court is not to go outside the instrument in an attempt to give effect to what it conceives to be the grantor's actual intent or motive. State ex rel. Goddard v. Coerver, 412 P.2d 259, 262 (Ariz. 1966). But if, under Arizona law, the grantor does not plainly express his intent, or if the trust instrument contains ambiguous language, a court may construe the instrument consistent with the grantor's intent. Id. at 262-263. In these situations, the grantor's intent is to be determined by, among other things, the circumstances surrounding the execution of the trust instrument. Id. And in determining the grantor's intent, the court places itself in the position of the grantor at the time the trust was created and interprets his words and deeds in light of his environment at that time. Id. at 263. But where there is an ambiguity, the court looks at the circumstances surrounding the execution of the instrument to determine what the grantor meant by what he said, not what he intended, but failed, to say. In re Estate of Blacksill, 602 P.2d 511, 513 (Ariz. Ct. App. 1979). *597 In the instant situation, we find nothing in the language of either trust instrument or in the circumstances surrounding either trust instrument's execution that convinces us that the grantors (decedent and Samuel D. Flake) intended the principal of the trusts to remain intact. Rather, we find the opposite. Our reading of the trust instruments convinces us that the grantors' overall intent was to permit the survivor to invade the principal or revoke the trusts. In this regard, we are mindful that Article VIII of the 1983 trust instrument and Article IV of the 1987 trust instrument both provide that "from and after the death of both Trustors, this trust agreement shall be unamendable and shall be irrevocable". (Emphasis added.) In accordance with the maxim expressio unius est exclusio alterius (i.e., the expression of one thing is the exclusion of others), this clause, which creates irrevocability after the death of both trustors, taken with the absence of a clause that would have made the trust agreements irrevocable following the death of one of the two trustors, supports a conclusion that the trusts were meant to be irrevocable only after the death of both trustors. Here, *598 the surviving spouse had the power to demand that the trustee invade or consume any or all of the trust corpora at any time prior to the surviving spouse's death, without any duty to account to the remaindermen. And in such event, the amounts withdrawn would, if possessed by the surviving spouse at his death, constitute a part of his estate free of any claims of the remaindermen. Respondent argues that the interests passing to Samuel D. Flake do not qualify for the marital deduction because of a failure to satisfy the requirements of section 2056(b)(3), which contains an exception to the terminable interest rule in the case of a survivorship clause not exceeding 6 months. Respondent argues that here the 1983 trust instrument contains a 9-month survivorship clause, and hence the 1983 trust instrument does not satisfy the requirements of section 2056(b)(3). However, section 20.2056(b)-1(a), Estate Tax Regs., states that "the fact that an interest passing to a decedent's surviving spouse is a 'terminable interest' makes it nondeductible only * * * if it does not come within one of the exceptions referred to in paragraph (d) of this section." (Emphasis added.) Paragraph (d) states: *599 property interest passing to a decedent's surviving spouse is deductible * * * even though it is a terminable interest, and even though an interest therein passed from the decedent to another person, if it is a terminable interest only because * * * It is a right to income for life with a general power of appointment, meeting the requirements set forth in § 20.2056(b)-5; * * *. [Sec. 20.2056(b)-1(d), Estate Tax Regs.]
Here, the surviving spouse (Samuel D. Flake) has the right to income for life with a general power of appointment. Hence, the interest passing to Samuel D. Flake under each trust satisfies the exception to the terminable interest rule enumerated in section 2056(b)(5) and section 20.2056(b)-1(d)(2), Estate Tax Regs. We are mindful that Article III, paragraph 5, of the 1983 trust instrument states: "Notwithstanding anything herein to the contrary * * * should the Surviving First Beneficiary not live longer than nine months after the Decedent First Beneficiary, then * * * the Survivor First Beneficiary shall have a life interest only in the Decedent's Trust." (Emphasis added.) We do not believe that this "Notwithstanding anything herein to the contrary" *600 language invalidates the revocation provision set forth in Article VIII, paragraph 1, of the 1983 trust instrument. We believe that Articles III and VIII of the 1983 trust instrument should be interpreted so that the surviving spouse can revoke the trust at any time, including the time period beginning with the death of the first of the trustor-spouses and ending 9 months thereafter. To conclude, construing these trust instruments under Arizona law, giving full effect to all the language used therein and the circumstances attending the execution of the trust agreements that might have a bearing thereon, we hold that decedent's interests in both the 1983 trust and the 1987 trust that passed to her husband upon her death qualify for the marital deduction. To reflect the foregoing, Decision will be entered for petitioner. Footnotes
1. Sec. 2056(b)(5) provides as follows: Life estate with power of appointment in surviving spouse. -- In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse -- (A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and (B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.
This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.↩